# BENNETT *v.* UNITED STATES.

ERROR AND CERTIORARI TO THE CIRCUIT COURT OF APPEALS
FOR THE SIXTH CIRCUIT.

No. 603.   Argued January 8, 1913.—Decided February 24, 1913.

*Hoke* v. *United States, ante,* p. 308, followed to effect that the White Slave Traffic Act of June 25, 1910, is constitutional.

A variance in names cannot prejudice defendant if the allegation in the indictment and the proof so correspond that the defendant is informed of the charge and protected against another prosecution for the same offense.

Variances as to the name of the woman transported or in the place where the tickets were procured or as to the number transported, between the indictment and proof of offenses under the White Slave Traffic Act *held* not to have prejudiced the defendants and not to be reversible error.

Instructions to the jury that there is testimony tending to corroborate the testimony of a witness charged with being an accomplice and that it is for the jury to consider the force and value of the testimony and the weight to be given to it, is sufficient to properly leave the matter with the jury.

194 Fed. Rep. 630, affirmed.

THE facts, which involve the constitutionality and construction of the White Slave Act and the validity of an indictment and conviction thereunder, are stated in the opinion.

*Mr. Max Levy* for plaintiff in error:

The only authority that Congress could have to enact the statute in question is the commerce clause in Art. I, par. 2 of § 8 of the Constitution of the United States.

A careful analysis of the statute develops—First, that it is not a crime for a common carrier to carry a person from place to place for the purpose of prostitution, or for any other purpose.

Second. The person traveling, or being carried, cannot be punished for traveling on the common carrier, notwithstanding the fact that she may be traveling voluntarily for the purpose of prostitution.

Third. It is only the person who purchases the ticket, etc., or in any way advises a woman or girl to travel interstate who is punished. In other words, the accessory is punished, and not the principal.

The power to regulate interstate commerce cannot infringe upon the police powers of the State; persons are not subjects of commerce. *New York* v. *Miln*, 11 Pet. 102.

The true test as to whether an article or thing is a proper subject of commerce and can be considered as a commercial article is whether the said article or thing is merchantable. *Bowman* v. *Chicago & C. Ry. Co.*, 125 U. S. 489; *Boyce* v. *Anderson*, 2 Pet. 149; *The License Cases*, 5 How. 599.

Under power to regulate commerce, Congress has no power to declare the status which any person shall sustain while in a State. 17 Amer. & Eng. Ency. of Law, 2d ed., p. 52; *Lemmon* v. *People*, 26 Barb. (N. Y.) 270, aff'd 20 N. Y. 562.

The intent in a case of this character does not govern, but it is the condition in which each article or subject is found. *United States* v. *E. C. Knight & Co.*, 156 U. S. 1.

Congress has no right to regulate or punish prostitutes.

The crime of prostitution, or the procuring of prostitution in any of the States of the Union, if committed in any of them, comes under the police powers of the various States with which Congress has no right to interfere.

The various States of the Union have not delegated to Congress the right to interfere with their police powers, such as the regulation of prostitution, etc.

The Government of the United States is one of enumerated powers, and all powers not granted are reserved to the people. *Kansas* v. *Colorado*, 206 U. S. 46, 89; *Fairbanks* v. *United States*, 181 U. S. 283.

An unconstitutional act is not a law. It is in legal contemplation as though it had never been passed. *Norton* v. *Shelby County*, 118 U. S. 425.

Congress, under the commerce clause of the Constitution, has power to regulate the commerce and perhaps forbid commerce in any commodity, or to forbid any particular form of commerce, and when it has exercised that power of regulation, then, and not until then, the power to enact a criminal statute as a convenient means of carrying into execution the power to forbid under the commerce clause arises.

The non-exercise by Congress of its power to regulate commerce among the several States is equivalent to a declaration by that body that such commerce shall be free from restrictions. *Welton* v. *Missouri*, 91 U. S. 275; *Hall* v. *De Cuir*, 95 U. S. 485; *Webber* v. *Virginia*, 103 U. S. 344, 351; *Smith* v. *Alabama*, 124 U. S. 465, 473.

Now, then, Congress having passed no act making it unlawful for women to travel from State to State for any purpose, it is equivalent to the declaration of Congress

that such travel by such person shall be free and untrammelled. *United States* v. *Dewitt*, 9 Wall. 41.

Congress not having passed a law prohibiting women from traveling for any purpose, it cannot be a crime to aid such women in traveling from place to place.

Congress has not exercised its power to direct that no woman or girl shall travel from place to place for any purpose whatever, moral or immoral, but, on the contrary, by its failure to so legislate, by its very negative act, has declared that right to exist.

There is a clear distinction between lottery dealing and the white slavery traffic, and the *Lottery Cases*, 188 U. S. 321, do not apply, as they do not refer to transportation of persons but only of things.

Congress has no right to keep any person from traveling from State to State, because the person arriving at his destination intends to commit a crime upon his arrival. And if such person did commit a crime upon his arrival in a sister State, the Government of the United States could not assume jurisdiction because such person had traveled in interstate commerce for a criminal purpose. The police power of the State is supreme in such a case.

Even aliens come under the regulation of the police powers of a State as soon as they mingle with and become a part and parcel of the population of the State, and are then subject to the penal laws of such State. *Keller* v. *United States*, 213 U. S. 138.

Freedom of travel and intercourse cannot be infringed. *The Passenger Cases*, 7 How. 283, 426.

The statute is unconstitutional as denying equal protection of the laws.

The various States have never surrendered the police power to Congress, and, therefore, the law in question is an infringement upon the police powers of the State. *King* v. *American Transportation Co.*, 14 Fed. Cases, 512.

It is not within the province of Congress, or of any

legislative body, to restrict or restrain the migration of any person, or their social intercourse. Freund on Police Power, pp. 487, 528, 720; *Ex parte Smith*, 135 Missouri, 223; *Paralee* v. *Camden*, 49 Arkansas, 165; *Millikin* v. *Weatherford*, 54 Texas, 388; *In re Lee Sing et al.*, 43 Fed. Rep. 359.

*Mr. Assistant Attorney General Harr* for the United States.[1]

MR. JUSTICE MCKENNA delivered the opinion of the court.

Plaintiff in error and petitioner was indicted in the District Court for the Southern District of Ohio for the violation of the act of June 25, 1910. She filed a motion to quash and a demurrer to the indictment, which were overruled, and upon a plea of not guilty she was tried, convicted, and sentenced to eleven months imprisonment in the county jail of Miami County, Ohio, and to pay the costs of the prosecution.

She made motions for a new trial and in arrest of judgment, which were overruled, and she then prosecuted error to the Circuit Court of Appeals, where the judgment against her was affirmed. 194 Fed. Rep. 630.

The demurrer and the motion in arrest of judgment raised the question of the constitutionality of the statute, and the decision of the Circuit Court of Appeals sustaining the ruling of the District Court is assigned as error. The constitutionality of the law was decided in No. 381, *Hoke* v. *United States, ante*, p. 308, and the reasons there given need not be repeated.

Rulings of the District Court and the decision of the Circuit Court of Appeals upon them are also assigned as error.

---

[1] See abstract of argument for the United States in *Hoke* v. *United States, ante*, p. 313.

(1) Defendant was indicted for having caused the transportation of Opal Clarke, and, it is said, the testimony showed that her correct name was Jeanette but that she had gone by the names of Opal and Nellie, her real name, however, being Jeanette Laplante. A variance is hence asserted between the allegation and the proof. The Court of Appeals rightly disposed of the contention. As the court said, the essential thing in the requirement of correspondence between the allegation of the name of the woman transported and the proof is that the record be in such shape as to inform the defendant of the charge against her and to protect her against another prosecution for the same offense. The record is sufficient for both purposes. As the Court of Appeals said, "This leaves no possible ground for prejudice resulting from the double variance between the name used in the indictment and the name known to the respondent and the real name."

(2) The defendant, at the conclusion of the testimony, moved the court to instruct the jury to return a verdict of not guilty on the second count of the indictment for the reason that the indictment alleged that the tickets were procured at Chicago, Illinois, whereas the testimony showed that they were procured in Cincinnati, Ohio. The Circuit Court of Appeals did not pass on that assignment. It was either not made or it was considered to have no substantial support by the testimony. The only testimony referred to is that the tickets were purchased in Cincinnati and sent to the depot at Chicago, where the women transported got them and used them for transportation from there. It is not possible to imagine that the variance caused any prejudice, and the assignment may be passed without further comment.

(3) Another variance is asserted, in that the indictment charged the transportation of two women and the proof established the transportation of one. This again is a contention which has more of technicality than substance.

How what the defendant did not do can be considered material description of what she did do is not easy to imagine.

(4) There are errors assigned on instructions requested and instructions refused. The contention of defendant apparently is that both women charged to have been transported should have been objects of her intention and purpose. That aspect of the contention we have disposed of. So far as the instructions refused directed the attention of the jury to the intent and purpose alleged, they were covered by the general charge of the court.

(5) The basis of this contention is that Opal Clarke was the accomplice of defendant as to Ella Parks and that hence the court erred in its instructions to the jury in regard to the extent of the corroboration Opal Clarke's testimony had received.

The instruction complained of submitted to the jury the fact and warned against a conviction upon the uncorroborated testimony of an accomplice and said: "Necessarily, if you find that she was an accomplice with respect to these charges or any of them, you will then necessarily. have to inquire into the facts as to whether or not there is corroborating testimony. There is evidence tending to corroborate her testimony and it is for you to consider its force and value and the weight to give to it." The contention is that this was error, "as the court instructed the jury that there *was* corroborating evidence, when the court should have charged the jury that it was for them to ascertain from the testimony whether or not there was corroborating testimony." The objection is hypercritical. The court did not instruct the jury that there was corroborating testimony, but testimony of that tendency, and added that the force and weight of its corroborating power was for the jury to determine.

The record presents no error and the judgment is

*Affirmed.*