## McINTOSH v. UNITED STATES.

(Circuit Court of Appeals, Seventh Circuit. July 17, 1924. Petition for Rehearing Overruled September 18, 1924.)

No. 3324.

1. **Poisons ☞9—Charge of sale of morphine sulphate supported by proof of sale of morphine hydrochloride.**

In an indictment under Harrison Anti-Narcotic Act, § 1 (Comp. St. § 6287g), making it unlawful for any person required to register under the act to "sell * * * opium or coca leaves, or any compound, manufacture, derivation or preparation thereof," without being registered, a charge, under a videlicit, that defendant sold morphine sulphate, is supported by proof of a sale of morphine hydrochloride.

2. **Witnesses ☞359—Best evidence rule inapplicable to cross-examination.**

Best evidence rule did not apply to cross-examination of defendant as to his conviction as a frequenter of a gambling house.

3. **Witnesses ☞277(2)—Cross-examination of defendant held within proper limits.**

Where a defendant took the stand in his own behalf, and his testimony covered generally his past life, in wide range of cross-examination was permissible, and cross-examination as to conviction as frequenter of gambling house was not objectionable.

4. **Criminal law ☞728(3)—Time for objection to argument is when it is made.**

The time for objection to argument to the jury is at the time it is made, and not in advance, by motion to instruct counsel.

5. **Criminal law ☞1037(1), 1056(1)—Instructions not objected or excepted to are not reviewable.**

Instructions are not reviewable, in the absence of objection or exception thereto.

6. **Criminal law ☞1036(1), 1044 — Admission of evidence, without objection or motion to exclude, not reviewable.**

Admission of evidence, without objection at the time or motion to exclude later, is not reviewable.

7. **Witnesses ☞344(2)—Cross-examination as to visiting house of prostitution competent.**

On trial for dealing in derivatives of opium and coca leaves without being registered, cross-examination of witness, who said he was mere acquaintance of defendant, as to frequent visits to defendant's flat, where girls were kept for immoral purposes, held competent.

8. **Criminal law ☞911, 1156(1)—Ruling on motion for new trial discretionary, and not reviewable.**

Granting or refusing a new trial in the federal courts is within the discretion of the trial court, and not reviewable.

In Error to the District Court of the United States for the Northern Division of the Southern District of Illinois.

Criminal prosecution by the United States against George McIntosh. Judgment of conviction, and defendant brings error. Affirmed.

Frans E. Lindquist, of Kansas City, Mo., L. E. Stone, of Springfield, Ill., and J. B. Boddie, of Chicago, Ill., for plaintiff in error.

Thos. Williamson, U. S. Atty., of Springfield, Ill., Wm. B. Schroder, Asst. U. S. Atty., of Rock Island, Ill., and Thomas F. Smith, Asst. U. S. Atty., of Springfield, Ill.

Before ALSCHULER, EVANS, and PAGE, Circuit Judges.

PAGE, Circuit Judge. Plaintiff in error, here called defendant, asks reversal of a judgment of conviction under an indictment containing 12 counts, of which count 5 and counts 7 to 12 were nollied upon the trial. Upon counts 3 and 4 defendant was found not guilty, and was convicted on counts 1, 2, and 6.

[1] 1. Count 6 charged defendant to be a person "dealing in a certain derivative of

opium, to wit, morphine sulphate, and dealing in a certain derivative of coca leaves, to wit, cocaine hydrochloride," and that he did "unlawfully, willfully, and feloniously carry from one state, to wit, from the city of Bloomington, in the state of Illinois, to Robert D. Brown, in another state, to wit, the city of South Bend, in the state of Indiana, certain quantities of certain drugs, to wit, derivatives and preparations of opium, that is to say, one ounce of morphine sulphate, and a derivative and preparation of coca leaves, that is to say, one-half ounce of cocaine hydrochloride." The violation, it is charged, was committed on March 7, 1922. The indictment charged defendant, under a videlicet, with dealing in morphine sulphate; the proof showed a dealing in morphine hydrochloride. The statutory provision (Comp. St. § 6287g) is: "It shall be unlawful for any person required to register under the terms of this act to * * * deal in, * * * sell, * * * any of the aforesaid drugs without having registered and paid the special tax provided for in this section." The "aforesaid drugs" described in the act are "opium or coca leaves or any compound, manufacture, salt, derivative, or preparation thereof."

The gist of the offense charged in the sixth count is dealing in and transporting a derivative of opium. Morphine is a derivative of opium and morphine hydrochloride and morphine sulphate are subdivisions of morphine. In their physical properties there is only a slight difference in the crystal construction between morphine hydrochloride and morphine sulphate, and there is no difference in their therapeutical or medicinal properties. While by making averment of a material fact under a videlicet one may not escape the necessity of proving the charge, yet it is notice that the pleader does not undertake to prove the charge so alleged as laid.

In Guilbeau v. United States, 288 Fed. 731 (5th C. C. A.), where the charge was of an unlawful sale of certain derivatives and salts of opium, to wit, four grains of morphine sulphate, the evidence showed the sale of morphine hydrochloride. There, as here, the allegation of the specific kind was under a videlicet. A majority of the court held that the variance was fatal. Mr. Justice Walker, in a dissenting opinion, held that the variance was immaterial, citing numerous cases, including Westmoreland v. United States, 155 U. S. 545, 15 Sup. Ct. 243, 39 L. Ed. 255. There the charge was that the defendant administered to deceased strychnine and other poisons with the unlawful and felonious intent to take his life. The court said: "It was murder if he unlawfully and feloniously administered any poison with the design of taking life, and that which he so administered did produce death. At the common law, though it was necessary to allege the kind of poison administered, nevertheless proof of the use of a different kind of poison was regarded as an immaterial variance. 'If A. be indicted for poisoning of B., it must allege the kind of poison; but if he poisoned B. with another kind of poisoning, yet it maintains the indictment, for the kind of death is the same.' 2 Hale, P. C. 185; 2 Bishop, Crim. Pro. §§ 514 and 555."

In Hoke v. United States, 227 U. S. 308, 324, 33 Sup. Ct. 281, 284 (57 L. Ed. 523, 43 L. R. A. [N. S.] 906, Ann. Cas. 1913E, 905), the court said: "The indictment charges that women were transported over the Texas & New Orleans Railroad Company's road and that the government failed to prove that such road was a line extending from New Orleans to Beaumont, Tex., these places marking the beginning and end of the transportation of the women. Further, the proof showed that their tickets were purchased over the Southern Pacific Road. The indictment alleges that the Texas & New Orleans Railroad was a part of the Southern Pacific System, and was commonly known as the 'Sunset Route,' and there was through transportation. The variance is not much more than verbal, and that it prejudiced their defense in any way is not shown. If it is error at all, it does not appear to have caused even embarrassment to the defense. But was it error? See Westmoreland v. United States, 155 U. S. 545, 549; also section 1025, R. S. * * * Judgment affirmed."

In Bennett v. United States, 227 U. S. 333, 338, 33 Sup. Ct. 288, 289 (57 L. Ed. 531) where the charge was transportation of Opal Clarke, the testimony showed that her correct name was Jeanette, but she had gone by the name of Opal and Nellie; her real name, however, being Jeanette Laplante. The court said: "The essential thing in the requirement of correspondence between the allegation of the name of the woman transported and the proof is that the record be in such shape as to inform the defendant of the charge against her and to protect her against another prosecution for the same offense. The record is sufficient for both purposes."

There is no suggestion that the defendant was embarrassed in any way by the alleged variance. The offense under the law was

the same, whether defendant sold morphine sulphate or morphine hydrochloride.

2. To alleged errors in the admission of evidence of witness Penn there were no objections when the evidence was offered, and it is too late to raise them here.

There is also assigned error on the ruling on objections to testimony given by the witness Sandusky. To that part of the testimony to which our attention is called there were two objections, each made after the answer had been given. Counsel for the government stated that the evidence was for the purpose of connecting the witness with the defendant over a period of time which would ultimately connect defendant with the transactions laid in the indictment. Motion to strike was denied, and the court then instructed the jury: "Before you proceed, the jury is instructed that this character of evidence is competent only for the purpose of showing the relations existing between this witness and the defendant McIntosh. It is not proof of the substantive act that is in issue here." No exception was taken to that instruction.

[2, 3] Objection was made to the cross-examination of defendant as to whether he had been convicted of being a frequenter of a gambling house, and counsel told the court that the objection was made on the basis that it was not the best evidence. The statement by the court that that rule did not apply where the defendant was under cross-examination was not error. The answer of the witness was that he did not know whether he had been convicted or not. After the question as to whether he had paid a fine had been answered objection was made and overruled. There seems to be some question as to whether or not that happened in the presence of the jury. The defendant went upon the stand in his own behalf, and his testimony covered practically his whole life. A wide range of cross-examination was permissible, and, under the circumstances, the examination was not objectionable.

[4] It is urged that the court erred in not instructing the jury to disregard the testimony of Ada Brown with reference to counts 5, 7, 8, 9, 10, 11, and 12. That was not the motion. The motion was to withdraw the evidence from the jury as to counts 3 to 12. The court allowed it as to counts 5, 7, 8, 9, 10, 11, and 12, and the jury found the defendant not guilty as to counts 3 and 4. Instead of instructing the jury as requested, the court permitted the counts as to which he sustained the motion to be nollied. We have passed upon the only remaining count, 6. There was a further motion in that connection, that the court instruct counsel that the evidence pertaining to counts 5, etc., was out of the record, and that counsel would not be allowed to refer or comment on the evidence introduced for the purpose of establishing those counts. The time to object to argument is at the time it is made. We do not find that there was any improper comment made, and it is not suggested that any was made.

Complaint is made of the admission of conversations between one Ada Brown and another outside of the presence of the defendant. The only question about conversation was as to whether she had conversation with another person. The court told the witness to answer "yes" or "no," and she said, "Yes." No further question was asked; no further conversation was detailed, no further objection was made.

Objection is made to the alleged erroneous ruling of the court, over objection of the defendant, to the leading form of questions. An examination of the record shows that in some of the instances referred to the questions were leading, and some of them were not. In several instances, where the objection was overruled, the answer was favorable to the defendant. It does not appear that counsel improperly persisted in asking leading questions, or that the court did not properly control the situation.

[5] Error is urged as to the charge to the jury with reference to the testimony of the witnesses Penn, Ada Brown, and Robert D. Brown. The record fails to show any objections made or exceptions taken to instructions of the character suggested.

[6] We see no error in assignments 16 and 17. Substantially the only objection made upon the pages referred to in 17 was after the examination was concluded, and there was no motion to exclude.

Under assignment 18 the error charged is that the defendant was unduly limited in his cross-examination. The limitation consisted in the refusal of the court to permit counsel to ask the witness where he got the morphine which he said he had taken during that day. The testimony was admitted to rebut the presumption attempted to be raised by defendant that officers had furnished morphine to witnesses.

It was assigned for error that the court permitted Robert D. Brown to state his conclusions as to what was meant by "lumps of misery" in a statement sent him by defendant. He simply said that it meant an ounce

of morphine, and after the answer was in a general objection was made, without assigning any reason. We see no error.

The twentieth error assigned relates to the admission of Exhibit 3. While it cannot be found in the record, it seems to have been some kind of a pasteboard box, that counsel for defendant said it "seemed to him" related to the twelfth count in the indictment, which had been nollied. It could hardly have been very prejudicial to defendant.

The twenty-first assignment relates to misconduct on the part of counsel for the government. The conduct was improper. The court properly rebuked it, and instructed the jury to disregard it. We are of opinion that the incident could not have had any effect other than prejudicial to the government.

It is urged that the second paragraph of the affidavit of Robert D. Brown, made before the indictment, was improperly admitted in evidence. We are of opinion, as stated by the court, it was material in the light of the cross-examination as to a particular item in the notebook, and that, admitted for that purpose, it was not error. It served to refute an imputation from defendant that the officers had altered certain evidence while in their possession.

The twenty-third assignment relates to a matter which could not possibly have prejudiced the defendant.

[7] The twenty-fourth assignment relates to the cross-examination of defendant's witness Kelly. Exception is taken to the alleged scandalous conduct of government's counsel. The cross-examination complained of related to the frequent visits of the witness to the flat of defendant in Bloomington, where there were a number of girls kept for immoral purposes. Witness said that he was not an intimate but merely an acquaintance of defendant. The evidence was clearly competent under the circumstances, and conduct of counsel cannot be characterized as improper.

The twenty-fifth assignment relates to Exhibit 2. The exhibit does not seem to be in the record, and was simply a glass tube or bottle, which one of the witnesses said McIntosh had given him. It does not appear to be very material in any event.

[8] The last assignment of error pertains to the refusal to grant a new trial. That was within the discretion of the court and is not assignable as error.

We have noticed all assignments, though many of them are manifestly unimportant.

The judgment is affirmed.