## KING v. UNITED STATES.

Circuit Court of Appeals, Sixth Circuit.
April 5, 1928.

No. 4889.

1. **Criminal law ⚖═1129(1)—Sufficiency of journal record of trial court is not open for consideration by appellate court, in absence of assignment (Circuit Court Rule 11).**

Under Circuit Court Rule 11, sufficiency of journal record of trial court is not open for consideration by appellate court, in absence of assignment, except that appellate court may, at its option, notice a plain error.

2. **Criminal law ⚖═262—Defendant's proceeding to trial without objection for lack of formal arraignment and failure to plead to indictment implied waiver (Jud. Code, § 269 [28 USCA § 391]).**

Defendant's proceeding to trial without raising objection to lack of formal arraignment or fact that he had not pleaded to indictment implies waiver thereof, or at least did not constitute such formal defect as would be prejudicial within meaning of Judicial Code, § 269 (28 USCA § 391), so as to authorize reversal in absence of assignment of error thereto.

3. **Criminal law ⚖═977(3)—Sentence may be postponed pending decision on motion for new trial.**

Trial court may properly postpone sentence pending decision on motion for new trial.

4. **Criminal law ⚖═950—Successor to trial judge, dying after verdict, was competent to pass on new trial and allow bill of exceptions (28 USCA § 776).**

Under 28 USCA § 776, successor in office to trial judge who died after verdict was returned was competent to pass on motion for new trial and to allow bill of exceptions.

5. **Criminal law ⚖═1144(15)—Publication of newspaper article while jury was separated for night held not to show error; there being no assumption jury were not admonished.**

Failure of trial court to declare mistrial because of publication, on morning after jury had been permitted to separate for the night, of article relative to defendant's arrest on another charge, held not error, in absence of showing in record of exception and as to whether inquiry had been made of jury relative to reading article and jury thereafter cautioned against allowing such to influence the verdict, since it cannot be assumed, in absence of affirmative showing, that jury was not so admonished.

6. **Post office ⚖═50—Complicity of defendant in mailing letters pursuant to scheme to defraud by inducing addressees to ship goods on credit held for jury (Pen. Code, §§ 215, 332 [18 USCA §§ 338, 550]).**

In prosecution under Penal Code, § 215 (18 USCA § 338), for placing various letters in mails pursuant to a scheme to defraud by inducing addressees of letter to ship goods on credit, evidence of complicity on part of the defendant held sufficient to require submission of case to jury, in view of section 332 (18 USCA § 550).

7. **Criminal law ⚖═564(3)—Venue held sufficiently proven by circumstances in prosecution for mailing letters pursuant to scheme to defraud (Pen. Code, § 215 [18 USCA § 338]).**

In prosecution under Penal Code, § 215 (18 USCA § 338), for placing various letters in mails pursuant to scheme to defraud by inducing addressees to ship goods on credit, venue held sufficiently proven, at least circumstantially.

8. **Post office ⚖═48(8)—Failure to prove alleged corporate capacity of victims of fraud under scheme by use of mails in inducing addressees to ship goods on credit held immaterial (Pen. Code, § 215 [18 USCA § 338]).**

In prosecution under Penal Code, § 215 (18 USCA § 338), for placing various letters in the mails pursuant to scheme to defraud by inducing addressees to ship goods on credit, failure to prove corporate capacity of alleged victims of fraud as alleged in indictment held immaterial, since gravamen of offense constituted misuse of the mails, and fact that intended vic-

tims were partnerships and individuals rather than corporations was not such a variance as would justify a reversal.

**9. Post office ⊚⟳48(8)—Proof of participation and complicity in misuse of mails supporting indictment for conspiracy held not fatal variance (Pen. Code, § 215 [18 USCA § 338]).**

In prosecution under Penal Code, § 215 (18 USCA § 338), for placing various letters in the mails pursuant to scheme to defraud by inducing addressees to ship goods on credit, fact that proof of participation and complicity in misuse of mails might also have supported indictment for conspiracy *held* not such variance as would support a judgment of reversal.

**10. Criminal law ⊚⟳1167(2)—Failure of proof as to certain counts did not justify reversal, where sentence was justified under conviction on another count.**

Failure of proof as to certain counts of indictment, even if apparent, does not justify reversal, where only sentence imposed was justified under conviction on another count amply supported by evidence.

In Error to the District Court of the United States for the Western District of Tennessee; Harry B. Anderson, Judge.

Fred W. King was convicted for placing in the United States mails various letters pursuant to a scheme to defraud, and he brings error. Affirmed.

L. H. Graves, of Memphis, Tenn., for plaintiff in error.

Herbert L. Harper, Asst. U. S. Atty., of Memphis, Tenn. (Lindsay B. Phillips, U. S. Atty., and Arthur G. Brode, Asst. U. S. Atty., both of Memphis, Tenn., on the brief), for the United States.

Before DENISON, Circuit Judge, and TUTTLE and HICKENLOOPER, District Judges.

HICKENLOOPER, District Judge. The plaintiff in error complains of a sentence pronounced June 2, 1926, upon a verdict of guilty returned June 3, 1925. The case was tried at the May, 1925, term of the District Court at Memphis; that is to say, on June 1, 2, and 3, 1925. The district attorney did not move for sentence immediately, and no action was taken upon the verdict prior to the death of the trial judge, which occurred July 9, 1925. The November term commenced November 23, 1925, and motion to set aside the verdict and for a new trial was duly filed November 20, 1925, being thus within term.

The indictment contained four counts, each charging a violation of section 215 of the Penal Code (18 USCA § 338) by placing in the United States mails at Memphis, Tenn., the various letters made the bases of the several counts. Each count submitted to the jury is founded upon correspondence with a separate alleged victim of the scheme to defraud. This scheme is alleged to have consisted of the making by the defendant of willfully false statements of the financial condition of the Contractors' Mill & Lumber Company, of which the defendant was the acting president, for the purpose of inducing the addressees of the letters there set forth "to ship to defendant's said company the goods referred to in said letters, on credit, and thus to assume a greater risk of loss of the value of said goods than the said letters indicated." The second count was withdrawn from the consideration of the jury at the close of the evidence, and a verdict of guilty under the first, third, and fourth counts was returned.

The record is in exceedingly poor shape, and a motion to reverse and dismiss is made upon two grounds: (1) That there is no minute entry upon the records of the District Court showing that the defendant was ever arraigned for trial or entered a plea to the indictment, that there is not shown any list of names of the trial jurors, and that no minute entry of trial or verdict appears; and (2) that an entire term of court intervened between the trial and verdict and the entry overruling the motion for a new trial and imposing sentence, the court thereby losing jurisdiction in the matter.

[1, 2] This motion to reverse and dismiss must be denied. If the sufficiency of the journal record of the District Court is itself attacked, that question is not now open for consideration under Rule 11 for want of assignment, except that the court may, at its option, notice a "plain error," and under this optional power we decline to notice errors not real and vital. Counsel for the defendant below prepared a bill of exceptions in which they incorporated, as an integral part thereof, not only the entire evidence in verbatim form, but also recitals of the impaneling of the jury, of proceeding to trial, and of the return of the verdict, a copy of the verdict, the motion for a new trial, the motion and affidavit for a mistrial, and the minute entry overruling the motion for a new trial and imposing sentence. While those things which should appear by the journal of the court have no proper place in a bill of exceptions, yet we must assume that the events recited did take place. Except as to arraignment and plea, the recitals in the bill of exceptions show that, in any event, the record omissions, if any, are those which can ordinarily be supplied nunc pro tunc; and, even though the

defendant had not been formally arraigned, or had not pleaded to the indictment, his proceeding to trial without raising this objection would imply a waiver, or at least the formal defect would not be prejudicial. Garland v. State of Washington, 232 U. S. 642, 34 S. Ct. 456, 58 L. Ed. 772. Under these circumstances, we think that the alleged record omissions, if they exist, are defects which, giving effect to Judicial Code section 269 (28 USCA § 391), we ought not to regard as ground for reversal when error thereon is not assigned.

[3, 4] In arguing that the court lost jurisdiction by reason of the November, 1925, term intervening between verdict and sentence, counsel for the defendant fails to distinguish between postponing sentence pending the decision of a motion for a new trial and indefinitely deferring sentence, thus in effect suspending sentence or condoning the offense. The cases cited by plaintiff in error all relate to the latter aspect at a time when the District Courts were not expressly authorized to suspend sentence. It is clearly competent for the trial court to postpone sentence pending decision of the motion for a new trial as was here done. Ormsby v. U. S., 273 F. 977 (C. C. A. 6). The trial judge having died after verdict, it was also competent for his successor in office to pass upon the motion for a new trial and to allow the bill of exceptions. The conditions enumerated in R. S. § 953, as amended June 5, 1900, c. 717, § 1, 31 Stat. 270 (Comp. Stat. § 1590 [28 USCA § 776]), are all present in the case at bar.

[5] The next contention seriously urged is that the court erred in not granting the motion of the defendant to declare a mistrial. The jury was charged on the afternoon of June 2d, and, having failed to agree by the usual time for adjournment, were permitted to separate for the night, reconvening the next morning. As the defendant left the federal building on the evening of June 2d, he was arrested by two state officers on a charge of being a fugitive from justice from the state of Mississippi. This arrest was apparently made with the knowledge of the district attorney and without any remonstrance or objection upon his part. The fact of the arrest received publicity in the only morning newspaper published in Memphis, which carried an article headed in large type "Another Warrant is Served on Fred King." The article itself merely stated the facts of the arrest and the giving of a bond, which facts, however, could not have been admitted in evidence and may have been preju-

dicial in the eyes of the jury. The bill of exceptions contains a copy of the affidavit and motion for a mistrial stated to have been filed on June 3d, the same day the verdict was returned. From its tenor it would seem that this motion was filed before the return of the verdict, although it does not appear whether it was specifically called to the attention of the court or what action was taken thereon by the court. If properly called to the attention of the court, denied by the court, and exception to such ruling duly reserved, such action might very properly constitute error. U. S. v. Marrin, 159 F. 767 (D. C. Pa.); Mattox v. U. S., 146 U. S. 140, 150, 13 S. Ct. 50, 36 L. Ed. 917; Harrison v. U. S., 200 F. 662 (C. C. A. 6). If called to the attention of the court, however, inquiry made of the jury as to whether the article had been read, and the jury clearly and emphatically cautioned against allowing such article to influence their verdict, it is at least doubtful whether failure to declare a mistrial would constitute error. This is the more apparent if, upon the trial, the defendant were content that the deliberations of the jury should continue under such instructions and reserved no exceptions. We cannot assume upon the present record that the jury was not so admonished. The record does not affirmatively disclose any error in this particular.

[6] It is further objected that the record does not contain any substantial evidence establishing venue, viz. that the offending letters were mailed in the Western district of Tennessee, and that the defendant's connection with the writing of the letters was not sufficiently shown, that the letters themselves were improperly admitted in evidence. These two contentions are best considered together. As to both matters we think the evidence was sufficient. While the evidence that the defendant participated in the writing of the letters forming the bases of counts 3 and 4 is weak, there was substantial evidence as to the identity of the signature to all the letters with the signature of the defendant. Furthermore, the letters supporting the allegations of the first count were not included in the motion of the defendant to exclude, and in substance the defendant admitted his connection with this correspondence to both the post office inspector and the credit manager of the addressee. While engaged principally in outside work and at the mill, the defendant was the president of the Contractors' Mill & Lumber Company, active in its affairs, and in and out of the office, and there is persuasive evidence in the

record that he was fully conversant with the correspondence and co-operating in carrying it on. Under these circumstances, we think that there was sufficient evidence of complicity upon the part of the defendant to take the case to the jury, in view of the provisions of section 332, Penal Code (18 USCA § 550), certainly as to count 1.

[7] Upon the question of venue, there is no direct, affirmative evidence that the letters forming the basis of the first count were mailed in Memphis or were in fact ever transmitted through the mails. There is substantial evidence, however, that the defendant was present and engaged in corporate affairs in the city of Memphis at the time these letters were written; that the corporation maintained an office in that city, where the company's letters were transcribed; that it was the duty of the stenographer to post such letters at the close of each business day; that the letters of the second count, the third count, and the principal letter of the fourth count were received through the mails; and that the letters of the first count, of practically the same tenor as the others, found their way to Louisville, Ky., on the days following their dates. The envelopes were not saved or produced. There is no scintilla of suggestion that they were not mailed or that they were mailed elsewhere than in the city of Memphis. In the absence of any such suggestion, and merely by reason of the bare possibility that after transcription they were personally delivered, or taken to some other state or district for mailing, we are of the opinion that venue as to letters of the first count, as well as of the third and fourth counts, was sufficiently proved, at least circumstantially. A reasonable conclusion to be drawn logically from the evidence is that, having been prepared in Memphis, under office routine which contemplated mailing in Memphis, and having been received at destination either through the mails or within the usual time for transmission by mail to a distant city, all the letters were in fact mailed in the city at which they were dated, in the Western district of Tennessee.

[8, 9] Lastly, it is objected that there was no proof of the corporate capacity of the alleged victims of the fraud, the indictment averring that all such victims were corporations but the proof being silent as to such corporate capacity. The fact that the business of such victims was carried on under the names alleged in the indictment sufficiently appears, and is not disputed. The fact that the victims were corporations, as distinguished from partnerships or individuals

carrying on their business in the several names given, was a wholly immaterial averment, and failure of proof in this particular insufficient to justify the granting of a new trial. The gravamen of the offense was the misuse of the mails, and, had it affirmatively appeared that the intended victims of the fraud were partnerships or individuals of the same or closely similar names, there would be no such variance as would justify reversal. Beavers v. U. S., 3 F.(2d) 860 (C. C. A. 6); Kasle v. U. S., 233 F. 878 (C. C. A. 6); Bennett v. U. S., 227 U. S. 333, 338, 33 S. Ct. 288, 57 L. Ed. 531. Nor was there any such variance as would justify reversal because the proof of participation and complicity in the misuse of the mails might also have supported an indictment for conspiracy to so misuse the mails, which latter charge was not included in the indictment. [10] Defectively prepared as the record is, the evidence is amply sufficient to support a verdict of guilty as to the first count, and possibly as to the third and fourth counts also. However, failure of proof as to the third and fourth counts, even if apparent, would not justify reversal, since only such sentence was imposed as was justified by the hypothesis of guilt of the crime charged in the first count.

The judgment of the court below is affirmed.