The **UNITED STATES** of America
v.
**Sam STEPP, Defendant.**
**Cr. A. No. 14963.**

United States District Court
D. Colorado.

Sept. 11, 1956.

Donald E. Kelley, U. S. Atty., Robert S. Wham, Asst. U. S. Atty., for District of Colorado, Denver, Colo., for United States of America.

Roy R. Romer, Denver, Colo., for defendant.

KNOUS, Chief Judge.

This matter arises upon the defendant's motion "For Judgment of Acquittal or Arrest of Judgment." The defendant was tried and convicted by a jury for making a threat upon the life of the President in violation of 18 U.S.C. § 871. The principal grounds of defendant's motion are: 1) that in effect the Court

allowed an amendment to the single-count Indictment returned by the Grand Jury in violation of the Fifth Amendment to the United States Constitution; and 2) that there was a fatal variance between the proof and the Indictment. The Court has examined the further contentions advanced in the motion but does not believe that they are sufficiently meritorious to warrant discussion.

The Indictment charged,

"That on or about the 26th day of March, 1956, at Buena Vista, in the State and District of Colorado, Sam Stepp did, in the presence of Charles D. Sandoval and Isabel Mahan, knowingly and wilfully make an oral threat to take the life of the President of the United States by then and there declaring in substance as follows, to-wit: 'President Eisenhower is a German [———], and if I ever get close enough to him I will kill him. I have a 30-30 bullet for him. If he walks across the street in front of me I would let him have it,' all in violation of 18 U.S.C. § 871."

The proof of the Government upon trial disclosed that the defendant, in substance, made part of the threat in the presence of one of the persons named in the Indictment, and within an hour on the same day in the same place made in substance the other part of the threat appearing in the Indictment in the presence of the other person named therein, both of which were sufficient to constitute threats in violation of the statute.

At the close of the Government's case the defendant moved for judgment of acquittal on the grounds, generally, that the Indictment contained two offenses, i. e., that it was duplicitous, at least if not so in its form, it became so under the proof, and was so ambiguous and uncertain as to prevent the defendant from defending against it and further that a conviction under the Indictment would not be a bar to a similar subsequent charge. The Government met the motion by moving to elect under which offense it would proceed, and this motion was granted with the right reserved to the defendant in the event of a conviction to move for judgment of acquittal at which time the Court indicated it would have greater opportunity for study of the matter. Upon the resumption of the trial, the Court advised the jury that "the Government at this time has elected to proceed on the threat allegedly made to Mr. Charles Sandoval, and the defense may proceed on that basis." By its instructions, the Court informed the jury that the defendant was on trial for the threat allegedly made in the presence of Charles D. Sandoval and nothing else; that the evidence of the alleged threat made in the presence of Isabel Mahan could be considered only under the doctrine of similar offenses which was adequately explained to the jury. The defendant claims that in effect the granting of this motion to elect permitted the amendment of the indictment.

It is the unqualified rule that an amendment by a Federal Court to an indictment returned by the Grand Jury is in violation of the Fifth Amendment. Ex parte Bain, 1886, 121 U.S. 1, 7 S.Ct. 781, 30 L.Ed. 849; Dodge v. United States, 2 Cir., 1919, 258 F. 300, certiorari denied 250 U.S. 660, 40 S.Ct. 10, 63 L.Ed. 1194; Stewart v. United States, 9 Cir., 1926, 12 F.2d 524; Heald v. United States, 10 Cir., 1949, 177 F.2d 781; United States v. Dembowski, D.C.Mich.1918, 252 F. 894. While the rule may be clear, what in effect constitutes an amendment is not a matter free from doubt. Of Ex parte Bain, through which decision the prohibition against amendments expressed in the English common law and as adopted by the early state decisions flowed affirmatively into the federal law, it was said in Salinger v. United States, 1926, 272 U.S. 542, 549, 47 S.Ct. 173, 175, 71 L.Ed. 398, that,

"* * * In the case of Ex parte Bain, 121 U.S. 1, 7 S.Ct. 781, 30 L. Ed. 849, on which the accused relies, there was an actual amendment or alteration of the indictment to avoid an adverse ruling on demurrer, and the trial was on the amended charge

without a resubmission to a grand jury. The principle on which the decision proceeded is not broader than the situation to which it was applied."

and in Ford v. United States, 1927, 273 U.S. 593, 602, 47 S.Ct. 531, 534, 71 L.Ed. 793,

"But it is contended that this is to amend the indictment, and comes within the inhibition of the principle of Ex parte Bain, 121 U.S. 1, 7 S.Ct. 781, 30 L.Ed. 849. That decision condemns the striking out of words from an indictment. The action here complained of is merely a judicial holding that a useless averment is innocuous and may be ignored. * * *,"

and in the dissenting opinion of Chief Justice Stone to United States v. Ballard, 1944, 322 U.S. 78, 90, 64 S.Ct. 882, 888, 88 L.Ed. 1148,

"An indictment is amended when it is so altered as to charge a different offense from that found by the grand jury, Ex parte Bain, 121 U.S. 1, 7 S.Ct. 781, 30 L.Ed. 849."

A learned discussion of what is an amendment was set forth by the District Court of Washington in United States v. Munday, 1914, 211 F. 536, 538, 539–540, where it was alleged that the Government by abandoning the charge of the indictment relating to "the foreign or alien character of the Pacific Coal and Oil Company as an element of the crime charged in the indictment" constituted an amendment. The Court said:

" * * * There is no act of the government's attorneys or order of the court, which changes the dot of an 'i' or the cross of a 't' in the indictment. It is before this court just as it came from the grand jury. The announcement by the government that it abandons the foreign or alien character of the Pacific Coal & Oil Company as an element of the crime does not take from the indictment any words, phrases, or sentences. There is no change. There

is no correction made or authorized, nor is any directed by the court's order.

&ast; &ast; &ast; &ast; &ast;

"It is clear to me that to 'amend' means much more than 'abandonment.' It means to abandon a position and to carry the intention into effect by a change in the indictment so as to conform to the changed position. An amendment has operation as from the beginning and relates back to the inception of the action, while abandonment simply pertains to the future. Suppose a person would execute a promissory note with various conditions and provisions, and the holder of the promissory note would strike out some part of the note, or change it in some way. Its vitality is immediately destroyed. And so with an indictment, where a change is made. Neither would be the instrument of the maker, and it could not be enforced against the maker of the note or the defendants in the indictment. But suppose the holder of the promissory note should institute an action and there were some provisions in the note that he did not care to insist on, and the holder announced in open court, 'I waive absolutely and forever abandon any claim with relation to certain of the conditions.' That would not change the note nor deprive it of its validity. So in this case the abandonment of some of the recitations in the indictment does not change the indictment, but it changes the proof which is offered."

In the instant action, the indictment went to the jury at the conclusion of the case in precisely the same form with the precise wording as when it was returned to the Court by the Grand Jury—nothing was stricken or deleted therefrom. The jury was instructed that it was to consider one threat in their deliberations as to the guilt or innocence of the defendant and to consider the other as evidence only as to intent and motive under the well known exception. See Warford v.

People, 1908, 43 Colo. 107, 96 P. 556. The cases relied upon by defendant are clearly distinguishable. Ex parte Bain, supra, involved the alteration of an indictment in defense to a pre-trial motion of demurrer; Dodge v. United States, supra, involved the striking out of words as surplusage from two counts of the indictment, and the same error was involved in Stewart v. United States, supra; and, in United States v. Dembowski, supra, it was held that to allow an election of a count in an indictment duplicitous on its face in defense to a pre-trial motion to quash would effect an amendment.

The Court conceives no material difference in this situation in regard to an amendment than as would have been the situation had the Government's proof shown only the threat made in the presence of Mr. Sandoval, and no mention of the threat made in the presence of Mrs. Mahan. There the question would be one of variance, and here, by an election which for the purpose of guilt or innocence limited the proof to the threat made in the presence of Mr. Sandoval, the question becomes the same, i. e., one of variance. If in every case where proof did not conform with the precise language of the indictment, and upon submission of the case to a jury an amendment of the indictment resulted as a matter of course, the legion of judicial decisions spread upon the reports dealing with the problem of variance are all misconceived and should therefore be disregarded. To hold that this Indictment was amended would give credence to such an incredulous supposition.

The variance in the instant action is patent; whether it is a prejudicial variance is to be determined by the application of the rule set forth by the United States Supreme Court in Berger v. United States, 1935, 295 U.S. 78, 82, 55 S.Ct. 629, 630, 79 L.Ed. 1314:

"The true inquiry, therefore, is not whether there has been a variance in proof, but whether there has been such a variance as to 'affect the substantial rights' of the ac-cused. The general rule that allegations and proof must correspond is based upon the obvious requirements (1) that the accused shall be definitely informed as to the charges against him, so that he may be enabled to present his defense and not to be taken by surprise by the evidence offered at the trial; and (2) that he may be protected against another prosecution for the same offense. Bennett v. United States, 227 U.S. 333, 338, 33 S.Ct. 288, 57 L.Ed. 531; Harrison v. United States, [6 Cir.] 200 F. 662, 673; United States v. Wills, [3 Cir.] 36 F.2d 855, 856–857. cf. Hagner v. United States, 285 U.S. 427, 431–433, 52 S. Ct. 417, 76 L.Ed. 861."

It cannot be seriously contended that the defendant was unable to prepare his defense or that he was surprised at the trial because of the variance in proof. Both threats were made within a very short period of time, and both were made in the same place; in fact, in the same room, and all of the witnesses material to the entire transaction were present at the trial.

Nor, in the opinion of the Court, can the defendant be subject to another prosecution for the same offense. A situation closely analogous to that presented here was decided in Bennett v. United States, 6 Cir., 1912, 194 F. 630, affirmed 227 U.S. 333, 33 S.Ct. 288, 57 L.Ed. 531, wherein the defendant had been charged with a violation of the "White Slave Act", 18 U.S.C. § 2421 et seq., for the transportation of two named individuals. The proof showed transportation of one, and was silent as to the other. In affirming the conviction, Judge Denison stated, 194 F. at page 633:

" * * * It is true that where two persons are named as the subject of the offense, and it is proved as to one of them only, there is a seeming variance, but it is really a failure of proof as to a thing which it was not necessary to allege. The only points here, which are of substance and not of form, are, as with

**830**

reference to the last matter discussed, the question of misleading the respondent and the question of protection against a future prosecution. It is clear that respondent would not be misled unless there were two occasions so as to give rise to some ambiguity, and no such thing here appears. It is true, also, that, as to the person concerning whom the proof failed, the record would show a conviction which was in so far really unauthorized, but the protection against a future prosecution would be just as perfect, and it cannot be presumed that the action of the trial court, in possession of all the facts, would be prejudicially affected in the matter of sentence."

On the same point, the Supreme Court stated on pages 338 and 339 of 227 U.S., on page 289 of 33 S.Ct.:

"(3) Another variance is asserted, in that the indictment charged the transportation of two women and the proof established the transportation of one. This again is a contention which has more of technicality than substance. How what the defendant did not do can be considered material description of what she did do is not easy to imagine."

Of course, the one apparent distinction between the Bennett case and the case at bar is that there the variance was created by silence, here by positive proof. However, the Court does not consider the distinction material, for it would seem axiomatic that after having charged one offense and a jury being sworn to try the offense and proof thereof submitted to it, the Government could not then carve from the one offense two indictable offenses by electing proof, over the objection of the accused, to protect a conviction for the one offense.

By way of illustration, were an indictment to charge a threat made in the presence of "A" and "B", and the proof showed the threat was in fact made in the presence of "C" and "D", or in the presence of "E" alone, then clearly the accused would have been deprived of substantial rights. See McBrain v. State, 1931, 51 Okl.Cr. 136, 300 P. 321. The situation presented here, however, continuing to use the illustration, is that the proof showed the threat made to "A", and thus clearly distinguishable. Accordingly, for the reasons stated above, it is

Ordered and adjudged that the motion of defendant for "Judgment of Acquittal or Arrest of Judgment," be, and the same is hereby denied.