James F. PENNINGTON,
Petitioner–Appellant,

v.

Alan J. LAZAROFF, Warden,
Respondent–Appellee.

No. 98–4373.

United States Court of Appeals,
Sixth Circuit.

April 3, 2001.

Before DAUGHTREY and CLAY, Circuit Judges, and COHN,* District Judge.

PER CURIAM.

The petitioner, James F. Pennington, is an Ohio state prisoner who was convicted of sexually assaulting his step-daughters. Following unsuccessful litigation in the

---

* The Hon. Avern Cohn, United States District Judge for the Eastern District of Michigan, sitting by designation.

Ohio courts, Pennington filed a habeas corpus petition in federal district court, alleging three grounds for relief: (1) that the trial court violated his 6th Amendment rights by not allowing him to cross-examine one of the victims about her sexual activity with young men; (2) that the trial court erred in allowing the prosecution to introduce evidence of uncharged misconduct; and (3) that the variance between the indictment and evidence at trial violated his due process rights. The district court denied habeas relief, and Pennington appeals, insisting that the district court applied the wrong standard of review to the state court's decision. Although we agree that the district court applied the wrong standard of review in some instances, we conclude that Pennington's grounds for relief lack merit and affirm the judgment of the district court.

## FACTUAL AND PROCEDURAL BACKGROUND

In 1988, a Franklin County, Ohio, grand jury indicted petitioner James F. Pennington on one count of rape, in violation of Ohio Rev.Code § 2907.02, and four counts of sexual battery, in violation of Ohio Rev. Code § 2907.03. In 1991, he was found guilty on all charges and sentenced to 18–33 years in prison. On appeal, an Ohio court of appeals affirmed Pennington's conviction and sentence, and the Ohio Supreme Court dismissed Pennington's appeal sua sponte. *State v. Pennington,* 62 Ohio St.3d 1481, 581 N.E.2d 1388 (1991). Pennington then filed two post-conviction petitions with the Ohio courts, neither of which resulted in relief. Pennington now appeals the district court's denial of federal habeas corpus relief.

## DISCUSSION

### A. *Standard of Review*

The court reviews a district court's legal conclusions in a habeas proceeding *de novo*

and its factual findings for clear error. *See Lucas v. O'Dea,* 179 F.3d 412, 416 (6th Cir.1999). Review of the state court's decision is governed by the standards set forth in the Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254(d) (AEDPA). Section 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court unless the adjudication of the claim—

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In *Williams v. Taylor,* 529 U.S. 362, 120 S.Ct. 1495, 1519, 146 L.Ed.2d 389 (2000), the Supreme Court held that the "contrary to" and "unreasonable application" clauses of the statute have independent meanings. A state court decision can be "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or decides a case differently than the Court has on a set of materially indistinguishable facts. *Id.* at 1523. An "unreasonable application" of clearly established federal law occurs "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* Thus, "a federal habeas court making the 'unreasonable application' inquiry should

ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 1521. Although the Court did not define "objectively unreasonable," it observed that "[u]nder § 2254(d)(1)'s 'unreasonable application' clause..., a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 1522. The "relevant state-court decision" in this case is the decision of the Ohio Court of Appeals affirming Pennington's conviction upon direct appeal.

In the present case, the parties dispute whether the district court utilized the appropriate standard of review in analyzing the three grounds for error presented in the habeas petition, particularly whether the district court reviewed the state court's legal conclusions in light of clearly-established federal law. With respect to two of the petitioner's grounds for relief, we concur that the district court did not apply the appropriate standard of review when it accorded the legal rulings of the state court a "presumption of correctness." AEDPA clearly provides that "a determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1). However, endowing the state court's legal rulings with a "presumption of correctness" constitutes error. The question before the district court, like the question before us, is whether the state court's findings were contrary to, or involved an unreasonable application of, clearly established federal law. Although we decline to adopt the district court's reasoning, we nevertheless affirm the judgment based on the record before us.

## B. *Confrontation Clause*

■ Initially, Pennington argues that the trial court violated his right to confront the prosecution's witnesses by restricting cross-examination of one of the victims. During the trial, Pennington's counsel endeavored to question one of the petitioner's step-daughters about a dispute between her and Pennington arising from her alleged sexual activity with various young men. Pennington argued that he wanted to pursue the line of questioning in order to demonstrate the victim's bias and motive for testifying against him, not to show that she was promiscuous. The trial court, pursuant to Ohio Rev.Code 2907.02(D), ruled that Pennington's counsel could inquire as to any bias arising from conflicts about the victim's "dating," "socializing," or "type of friends," but prohibited questions posed to the victim or to any other witness about the victim's sexual activity. Thereafter, Pennington's counsel questioned the victim about disputes surrounding the victim's "activities."

Pennington's claim of error is premised essentially on the Confrontation Clause of the 6th Amendment to the federal constitution, which guarantees a criminal defendant the right "to be confronted with the witnesses against him." U.S. Const. amend. VI. This right protects a defendant's ability to cross-examine a witness in a fashion which tests his or her credibility. In *Delaware v. Van Arsdall,* 475 U.S. 673, 680, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986), the Supreme Court observed:

> "[A] criminal defendant states a violation of the Confrontation Clause by showing that he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness, and thereby 'to expose to the jury the facts from which jurors ... could appropriately draw inferences relating to the reliability of the witness.' "

(Citations omitted.) Thus, cross-examination is the "principle means by which the believability of a witness and the truth of his testimony are tested." *Davis v. Alaska,* 415 U.S. 308, 316, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974). However, while the discovery of bias is unquestionably relevant, a trial court retains discretion to limit the scope of cross-examination, including with respect to concerns about harassment, prejudice, confusion of the issues, witness safety, or interrogation that is repetitive or only marginally relevant. *See Van Arsdall,* 475 U.S. at 679, 106 S.Ct. 1431. In sum, the Confrontation Clause "guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer,* 474 U.S. 15, 20, 106 S.Ct. 292, 88 L.Ed.2d 15 (1985) (emphasis in original).

In its examination of Pennington's confrontation claim, the state court set forth the pertinent legal principles provided by *Davis, Van Arsdall,* and other Supreme Court cases. Because the state court invoked the correct legal rules, its decision should be reviewed under the "unreasonable application" prong of § 2254(d)(1)(a), specifically whether its application of the legal principles was "objectively unreasonable." *See Williams,* 120 S.Ct. at 1520 (A "run-of-the-mill state-court decision applying the correct legal rule from our cases to the facts of a prisoner's case would not fit comfortably within § 2254(d)(1)'s 'contrary to' clause."). We conclude that its application was not objectively unreasonable.

As recognized by the state court, "there was compelling nonsexual evidence of bias before the jury." The victim testified that she hated Pennington, that Pennington was a strict disciplinarian, and that he required her to perform household chores and restricted her personal freedom. In addition, there were allegations of physical abuse at the hands of Pennington, and, as mentioned above, Pennington's counsel questioned the victim about her "activities" with young men, although not specifically her sexual activities. In effect, interrogation concerning those activities would have been merely cumulative in establishing bias and motive.

Furthermore, as pointed out by the state court, some of the purposes of Ohio Rev.Code § 2907.2(D) are to guard a victim's sexual privacy, protect the victim from undue harassment, and discourage the tendency to try the victim. These concerns dovetail with a trial court's discretion to limit cross-examination due to concerns about harassment, and the state court in this case remarked that "there is no reason why [the victim] should not be afforded protection from undue embarrassment." We conclude that the state court's decision on this issue was "objectively reasonable" and thus not an "unreasonable application" of federal law.

## C. *Uncharged Misconduct*

Next, Pennington argues that the trial court erred in allowing the victims to testify about uncharged misconduct. At trial, the prosecutor elicited testimony from the victims as to sexual abuse perpetrated by Pennington against them that occurred prior to the acts alleged in the indictment. The trial court allowed the testimony over Pennington's objection, ruling that the other evidence of misconduct was "part and parcel" of the acts alleged in the indictment. In the table of contents for his appeal brief to the state court, Pennington characterized this issue as a violation of due process. However, the argument and the state court's analysis focused only on a purported violation of state law, specifically Ohio Rev.Code § 2945.59 and Oh. Evid.R. 404(B).

As proclaimed on previous occasions by the Supreme Court, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire,* 502 U.S. 62, 67–68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) (citations omitted). We conclude that the issue regarding evidence of the petitioner's prior conduct is one involving the application of state law and, thus, is not subject to federal habeas review. Even if properly before the court, we could only conclude that the introduction of the prior misconduct did not violate "fundamental fairness." As indicated by the state court, the evidence of the prior misconduct was "inextricably intertwined" with the acts charged in the indictment. The prior misconduct consisted of fondling, touching, and other acts that demonstrated the gradual progression of Pennington's abuse, and this progression, coupled with the evidence of Pennington's threats and the victims' fear and guilt, helped explain the victims' reason for not exposing Pennington's transgressions. Hence, the evidence of other misconduct was more probative than prejudicial, and its admission did not violate the due process clause.

### D. *Variance*

Finally, Pennington charges a due process violation because the dates culled from the evidence at trial varied from the dates alleged in the indictment. Pennington argues that these variances prevented him from presenting an effective defense.

The Supreme Court set out the due process standard that defendants must meet in order to support a constitutional claim based upon a variance between the indictment and the proof at trial, as follows:

> The true inquiry ... is not whether there has been a variance in proof, but whether there has been such a variance as to 'affect the substantial rights' of the accused. The general rule that allegations and proof must correspond is based upon the obvious requirements (1) that the accused shall be definitely informed as to the charges against him, so that he may be enabled to present his defense and not be taken by surprise by the evidence offered at the trial; and (2) that he may be protected against another prosecution for the same offense.

*Berger v. United States,* 295 U.S. 78, 82, 55 S.Ct. 629, 79 L.Ed. 1314 (1935) (citing *Bennett v. United States,* 227 U.S. 333, 338, 33 S.Ct. 288, 57 L.Ed. 531); *see also Hamling v. United States,* 418 U.S. 87, 117, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974) ("Our prior cases indicate that an indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense.") (citations omitted).

Pennington described three variances between the indictment and proof at trial. The state court reviewed each of them and concluded that none was sufficient to deprive the petitioner of the ability to present an alibi defense. Many of the "variances" appear to involve no more than faulty memory on the part of witnesses. There is no indication that defense counsel was taken by surprise with regard to any of the testimony now identified as prejudicial, or that the defense was hampered in any material fashion. Certainly, we cannot say that the state court's decision was contrary to or an unreasonable application of well-established federal law.

## CONCLUSION

For the reasons set out above, we AF-FIRM the judgment of the district court denying the petitioner's application for a writ of habeas corpus.