**BARTKUS v. UNITED STATES, and three other cases.**

Circuit Court of Appeals, Seventh Circuit.
June 8, 1927.

Nos. 3874–3877.

1. Conspiracy ⬅⬆25—Conspiracy statute does not make it crime to conspire that some person other than conspirators shall commit crime.

Conspiracy statute makes it crime for two or more persons to conspire to commit offense, but does not make it crime to conspire that some person other than conspirators shall commit it.

2. Conspiracy ⬅⬆43(6)—Indictment for conspiracy should state essential elements of substantive offense constituting object of conspiracy.

Though technical precision is not required, essential elements of substantive offense should be stated, when describing object of conspiracy in indictment.

3. Conspiracy ⬅⬆43(6)—In indictment for conspiracy that bankrupt corporation withhold property from trustee, allegation that corporation had been adjudged bankrupt and trustee appointed held not essential (Bankruptcy Act, § 29b, cl. 1 [Comp. St. § 9613]).

In indictment for conspiracy that corporation, as bankrupt, should fraudulently conceal property from its trustee in violation of Bankruptcy Act, § 29b, cl. 1 (Comp. St. § 9613), allegation that corporation had been adjudged bankrupt and trustee had been appointed held not essential.

4. Conspiracy ⬅⬆43(12)—In prosecution for conspiracy to withhold property from bankruptcy trustee, there was no fatal variance between allegation that bankrupt was "electrical company" and proof that it was "electric company."

In prosecution for conspiracy that bankrupt corporation should withhold property from trustee, there was no fatal variance between indictment charging that corporation was Bridgeport Electrical Company and proof that it was Bridgeport Electric Company.

5. Conspiracy ⬅⬆47—Evidence held insufficient to support conviction of defendants for conspiring with president of bankrupt corporation to withhold property from trustee.

Evidence held insufficient to support conviction of defendants for conspiring with president of bankrupt corporation to withhold property from trustee, though some of bankrupt's property found its way into their possession.

6. Criminal law ⬅⬆1159(2)—Circuit Court of Appeals cannot weigh evidence.

Circuit Court of Appeals is not permitted to weigh evidence in criminal case.

**7. Conspiracy ☞47—Commission of crime may be evidence that those committing it conspired to commit it.**

Though crime of conspiracy may be completed without actual commission of crime which is its object, commission of such crime may be evidence that those committing it conspired to commit it.

**8. Conspiracy ☞23—One defendant alone cannot be convicted of conspiracy.**

Where evidence was insufficient to support conviction of three of four defendants for conspiracy that bankrupt corporation withhold property from trustee, conviction of the other will be set aside also, since one person cannot commit crime of conspiracy.

In Error to the District Court of the United States for the Eastern Division of the Northern District of Illinois.

Alfons Bartkus, Victor Kelps, Adolph Nevar, alias Adolph Niewiardowski, and William Dronsuth were convicted of conspiracy that a bankrupt should conceal property from his trustee, and they separately bring error. Reversed and remanded, with direction.

John M. Zane, of Chicago, Ill., for plaintiffs in error.

George E. Q. Johnson and Edward J. Hess, both of Chicago, Ill., for the United States.

Before EVAN A. EVANS, PAGE, and ANDERSON, Circuit Judges.

ANDERSON, Circuit Judge. Plaintiffs in error were convicted of violating that portion of the conspiracy statute which provides: "If two or more persons conspire * * * to commit any offense against the United States, * * * and one or more of such parties do any act to effect the object of the conspiracy, each of the parties to such conspiracy shall be fined * * * or imprisoned, * * * or both." Comp. St. § 10201.

The offense against the United States sought to be charged as the object of the conspiracy is the violation of clause 1 of section 29b of the Bankruptcy Act, which, though amended since, at the time of the commission of the alleged offense read: "A person shall be punished, by imprisonment for a period not to exceed two years, upon conviction of the offense of having knowingly and fraudulently concealed while a bankrupt, or after his discharge, from his trustee any of the property belonging to his estate in bankruptcy." Comp. St. § 9613.

In substance the indictment charges that one of the plaintiffs in error, Bartkus, was president and manager of the Bridgeport Electrical Company, a corporation, and as such president and manager dominated the acts and doings thereof, and that the plaintiffs in error, anticipating and expecting that an involuntary petition in bankruptcy would be filed against the company, and that thereafter it would be adjudged a bankrupt, and that in said bankruptcy proceedings a trustee would be appointed of and for the estate in bankruptcy of the company, did conspire, combine, confederate and agree together "to the end and for the purpose that said Bridgeport Electrical Company, a corporation, while a bankrupt as aforesaid, unlawfully, knowingly, wilfully, and fraudulently should conceal from said trustee in bankruptcy of said Bridgeport Electrical Company, a corporation, a large amount of property, to wit, the sum of thirty five thousand dollars ($35,-000.00), and, to wit, a large quantity of merchandise and electrical goods, and goods for the manufacture of electrical appliances, and fixtures (a further and more particular description thereof is to said grand jurors unknown) of the value of, to wit, thirty five thousand dollars ($35,000.00)." Various overt acts are alleged to have been done by the defendants in pursuance of and in furtherance of said conspiracy and to effect the object of the same.

[1] The statute makes it a crime for two or more persons to conspire to commit—that is, themselves commit—the offense. It does not, in terms, make it a crime to conspire that some person other than the conspirators shall commit it. This probably accounts for the averment in the indictment that Bartkus was president of and dominated the Bridgeport Company. Bearing in mind that he who does a thing through another does it himself, we may construe the indictment to charge that plaintiffs in error conspired to commit the crime by causing the company to commit it. It is only by so construing it that the indictment can be held to charge the crime defined by the statute.

[2] Although technical precision is not required, it would seem that the essential elements of the substantive offense should be stated when describing the object of the conspiracy. The statute denounces concealment from the trustee of property belonging to the estate in bankruptcy. There is no averment in this indictment that the property intended to be concealed was the property of the estate in bankruptcy.

[3] The objection that there is no allegation that the corporation had been adjudged a bankrupt and a trustee had been appointed for it, is not well taken. Cohen v. United

States (C. C. A.) 157 F. 651; Steigman v. United States (C. C. A.) 220 F. 63.

[4] It is urged that there is a fatal variance between one material averment and the proof. The indictment charged that it was contemplated that the Bridgeport Electrical Company should be adjudged a bankrupt, and that it should conceal property. The evidence shows that the correct name of the corporation was the Bridgeport Electric Company, and it is claimed that this is a fatal variance. This contention cannot prevail, under the case of Putnam v. United States, 162 U. S. 687, 16 S. Ct. 923, 40 L. Ed. 1118, where the charge was embezzlement of money from "National Granite State Bank" and the proof showed the correct name to be "National Granite State Bank of Exeter," and under the case of Beavers v. United States (C. C. A.) 3 F.(2d) 860, where the defendant was charged with having stolen from interstate commerce, and the indictment alleged that the freight was shipped by "Duke & Co." and the evidence showed the shipment was by "W. B. Duke Sons & Co."

As was stated by the Supreme Court in Bennett v. United States, 227 U. S. 333, at page 338, 33 S. Ct. 288, 289 (57 L. Ed. 531): "The essential thing in the requirement of correspondence between the allegation of the name of the woman transported and the proof is that the record be in such shape as to inform the defendant of the charge against her and to protect her against another prosecution for the same offense."

Plaintiffs in error contend that the evidence does not sustain the charge; that there is no evidence upon which to base the finding that Kelps, Nevar and Dronsuth conspired with Bartkus to have the company commit the offense; that is, to have the company, while a bankrupt, conceal its property from its trustee.

[5] Government's counsel insist that the evidence is sufficient, and review it in their brief. They conclude their review with this language:

"It thus appears that this corporation operated by defendant, Bartkus, must have been know by him to be approaching bankruptcy; that, notwithstanding this, the purchases of merchandise in the name of that company rapidly increased, and by calculations most favorable to the bankrupt, resulted in a shortage of, to wit, $27,000; that after court proceedings were had and notice posted upon the premises of bankrupt, said defendant, with others, made numerous trips removing merchandise that ostensibly belonged to the trustee in bankruptcy. As above stated, these defendants were related; in the same general line of business, their places of business being about one mile apart, and, at least, some of the merchandise purchased by the bankrupt found its way, under very suspicious circumstances to possession of the other defendants, namely in a private garage, three or four miles distance away in a residential district. True, defendants seek to explain their possession of these goods by asserting purchase of the same, but the record in this case indicates that these alleged purchases were had in the months of November and December when defendant, Bartkus, was increasing his purchases from others, and by their very defense they were put on notice that the Bridgeport Electric Company was insolvent. It will also be observed that while some of the defendants made the defense that they purchased this material from the Bridgeport Electric Company, their brother-in-law, Bartkus, informed them the company was in need of money, and at the very time he was in the act of withdrawing $7,500 from the treasury of the company."

An examination of the record discloses that this is as strong a statement of the facts proved as the evidence warrants. If it be conceded that the evidence shows that Bartkus planned to have the company, of which he was president and which he dominated, commit the offense, we do not think it establishes that Kelps, Nevar, and Dronsuth, or any one of them, participated in his plan.

The most that can be said of the evidence relating to occurrences before the company became bankrupt, is that it shows that some time before the bankruptcy some merchandise which had been purchased by, and therefore was at one time owned by the bankrupt, found its way into the possession of Kelps, Nevar, and Dronsuth. It is sought to characterize this possession as fraudulent upon the ground that Kelps, Nevar, and Dronsuth were brothers-in-law of Bartkus; that they were engaged in the same business in which he was engaged; that their place of business was about a mile from his, while the garage in which the merchandise was found was three or four miles away, in a residential district; and upon the further ground that, before the bankruptcy, Bartkus had informed them that the Bridgeport Company was in need of money. These are the suspicious circumstances relied on by government's counsel.

The fact that some merchandise which had been purchased by bankrupt (and also may have been sold by it) found its way into the possession of Kelps, Nevar, and Dronsuth, even under the suspicious circumstances men-

tioned, does not go far to establish that they conspired with Bartkus to commit the crime charged. The record shows that the merchandise which found its way into this garage was not of large amount or value. Government's counsel say it was "at least, some." No effort was made to take possession of it for the bankrupt.

[6] While we may not weigh the evidence, we deem it proper to say that it appears from the record that Kelps, Nevar, and Dronsuth took the witness stand themselves and gave testimony, which, if true, disposes of the supposed incriminating circumstances urged against them. They testified that they bought and paid for the goods, and explained why they had merchandise stored in a residential neighborhood—that their business was putting electrical equipment into residences. This testimony was corroborated by other witnesses and was not contradicted in any way.

This brings us to the consideration of the evidence that, after notice of the bankruptcy, Bartkus, "with others," took away property which the government said "ostensibly" belonged to the trustee. The evidence upon this fails to establish that the property taken away actually belonged to the Bridgeport Company. Indeed, "ostensibly" is stronger than the whole evidence warrants.

[7] This taking could only be relevant to show the intent of the alleged conspirators. While to complete the crime of conspiracy the actual commission of the crime which is its object is not necessary, its commission may be evidence that those committing it conspired to commit it, on the familiar principle that persons are held to intend to do what they actually do. So here, concealment after bankruptcy by alleged conspirators would strongly tend to prove that they planned to so conceal. But the evidence shows that Kelps, Nevar, and Dronsuth were not "the others" with Bartkus. No one of them was present or was shown to have had any knowledge of it. As evidence that they conspired to do this particular thing, it has no probative force whatever. We are not now concerned with the question whether, if a conspiracy were proved, they would be bound by Bartkus' acts. If a conspiracy to conceal had been otherwise established, the act of Bartkus would be the act of all the conspirators. But the acts of Bartkus, even if done in pursuance of a plan formed by him, if done without the participation and knowledge of Kelps, Nevar, and Dronsuth, do not tend to show that they participated in his plan.

[8] The facts proved may warrant the conclusion that Bartkus planned to conceal the bankrupt's property as alleged, but they are not sufficient to support a verdict that Kelps, Nevar, and Dronsuth participated with him in such plan. The verdict and judgments against Kelps, Nevar, and Dronsuth cannot stand; and as one person alone cannot commit the crime of conspiracy, and as there is no evidence to support the averment as to other conspirators unknown, the verdict and judgment as to Bartkus must also be set aside.

Reversed and remanded, with direction to grant a new trial.