## CAMERON v. BRITTINGHAM.

### In re FOWLER'S ESTATE.

### No. 4236.

Circuit Court of Appeals, Seventh Circuit.

May 12, 1930.

Harold F. Lindley, of Danville, Ill., for appellant.

W. K. Bracken, of Bloomington, Ill., for appellee.

Before EVANS, PAGE, and SPARKS, Circuit Judges.

PAGE, Circuit Judge.

Appellee, trustee in bankruptcy of one Fowler, recovered a judgment in trover against appellant, a stockholder and director, and the manager and president of the Sibley (Ill.) State Bank, that, acting through appellant and within four months of bankruptcy, while it had reason to believe Fowler was insolvent, applied on its debt funds deposited in Fowler's account under the following circumstances:

Fowler, a tenant on a large farm, had been running behind in his affairs for several years, and determined to quit farming. Appellant, on his own request, was permitted to clerk Fowler's public sale on Friday, February 25, 1927, of substantially all his property, excepting some corn. Without consulting Fowler, appellant made all checks payable to himself and all notes payable to his bank. After the sale, when appellant said he had to go down to the bank and make settlement with some purchasers, Fowler told him he would come down to the bank after dinner and settle up. When Fowler reached the bank, appellant was gone and could not be found. Saturday morning, at the bank, Fowler told appellant that he was moving, but would come in later if he got through in time. Fowler went to the bank Sunday morning, and as to what took place then and also early Monday morning there is an irreconcilable conflict. What appellant did with the proceeds of sale Friday night does not appear. Some time, without consulting Fowler, appellant took over the notes and checks, and, under date of February 26, 1927 (Saturday) drew what he calls a check, signed by himself, for the full proceeds of sale, and placed it to Fowler's credit in his general checking account. Before 8 o'clock Monday morning the whole deposit had been applied by appellant to the payment of Fowler's debt to the bank.

All questions here are raised on appellant's overruled motion for an instructed verdict.

736

In defense of his action, appellant urges seven propositions:

(1) That, as clerk of the sale, he had the right to deposit the money. There is no such legal presumption.

(2) That Fowler ratified the act of making the deposit.

(3) That appellant's first special plea was proven, one of the material averments therein being that such deposit was made with the knowledge of, and without objection from, Fowler.

The above propositions could only be determined by considering the controverted facts that were before the jury.

(4) That one who acts as agent merely through friendship and without reward is only liable for gross negligence. The evidence shows that clerking the sale was not a merely friendly act, without reward. The jury would have been justified in finding, from what preceded and what followed the sale, that appellant had a deep interest in the opportunity to clerk the sale, and the evidence showed that his reward was large.

(5) That, even though appellant induced Fowler to prefer the bank, he is not liable because he received no benefit therefrom. That proposition is based upon an assumption of fact, not justified by the record. Appellant got a benefit as a stockholder, and was relieved from his obligation as an indorser on a $700 note.

(6) That a verdict not supported by evidence, or that is the result of prejudice, cannot be sustained. There is no evidence that there was prejudice against appellant. Contrary to the assumption that there is no evidence to support the verdict, we find that there was a controversy, shown by the evidence, on every material issue.

(7) That the bank had the right to apply the deposit to the payment of its debt. This proposition is based upon the assumption that the deposit was made with actual or implied authority from Fowler or was ratified by him. That was a jury question, decided adversely to appellant, on controverted facts.

A fair inference that the jury might have drawn from the evidence of what preceded what appellant did at and what he did after the sale is that appellant deliberately planned to get the sale proceeds into his possession in cash and in notes payable to his bank and in checks payable to himself, so that he could do exactly what he did. In effect, appellant paid the money out of his own hands to the bank. No good purpose will be served by further discussing the evidence.

In a charge of conspiracy to conceal assets of bankrupt from his trustee, we have held that it is not necessary to show the appointment of a trustee, or even that bankruptcy proceedings are pending. Greenspahn v. U. S. (C. C. A.) 298 F. 736, 738; U. S. v. Bartkus (C. C. A.) 21 F.(2d) 425, 426.

The judgment is affirmed.