William Ross PHILLIPS, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 14393.

United States Court of Appeals,
Ninth Circuit.

Jan. 6, 1955.

Rehearing Denied Feb. 23, 1955.

Morris Lavine, Los Angeles, Cal., for appellant.

Laughlin E. Waters, U. S. Atty., Manuel L. Real, Louis L. Abbott, Asst. U. S. Attys., Los Angeles, Cal., for appellee.

Before STEPHENS, ORR and FEE, Circuit Judges.

ORR, Circuit Judge.

Appellant stands convicted on both counts of an indictment charging, first, a violation of 18 U.S.C.A. § 1005,[1] and, second, entering into a conspiracy to violate said section. The violation of 18 U.S.C.A. § 1005 is charged to have been committed by the making of a false entry in the records of the Bank of America, National Trust and Savings Association, Western and Santa Monica Branch, Los Angeles, California; a violation of 18 U.S.C.A. § 371[2] is charged to have been committed by conspiring to make said false entry.

The evidence adduced at the trial was to the following effect:

Appellant met one Salvatore Anthony Ferraro in 1951, again in June 1952, and again in January 1953; at this later date Ferraro was employed by said Bank of America, working at the Western and Santa Monica Branch.

Phillips and Ferraro discussed a business transaction involving the transportation and sale of automobiles to Mexico. Phillips told Ferraro it would be necessary to get an investor to invest $10,000 in the venture. Phillips then suggested to Ferraro that he, Ferraro, take a bank pass book and fill it out to show to prospective investors a deposit of $10,000. Ferraro did this and gave the book to Phillips.

A few days later, Phillips told Ferraro that this scheme had not *"worked"* on the prospective investor. Hence, it would be necessary for them to open a legitimate account and have Ferraro make an entry of $10,000 on the ledger card. This would be necessary to demonstrate to the prospective investor that a deposit actually had been made at the bank.

On February 18, 1953, Phillips opened an account at the Bank of America, Western and Santa Monica Branch, making an opening deposit of $200. Phillips was given a signature card which he filled out and returned to the bank clerk. He was given a savings pass book showing a deposit of $200. A savings ledger card was opened showing a deposit of $200. Ferraro then made an

1. 18 U.S.C.A. § 1005. "Bank entries, reports and transactions

\*   \*   \*   \*   \*

"Whoever makes any false entry in any book, report, or statement of such bank [national bank] with intent to injure or defraud such bank, or any other company, body politic or corporate, or any individual person, or to deceive any officer of such bank, or the Comptroller of the Currency, or the Federal Deposit Insurance Corporation, or any agent or examiner appointed to examine the affairs of such bank, or the Board of Governors of the Federal Reserve System".

2. 18 U.S.C.A. § 371. "Conspiracy to commit offense or to defraud United States

"If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined not more than $10,000 or imprisoned not more than five years, or both. \*   \*   \*"

entry of $10,000 on the savings ledger card. He received no money at the time the entry was made from appellant Phillips. No savings deposit slip was made to support the entry of $10,000. It was a false entry.

At the time of the making of the entry on the savings ledger card, Ferraro was an employee of the Bank of America, Western and Santa Monica Branch, which is a member of the Federal Reserve System.

During the two weeks following the making of the entry by Ferraro on the savings ledger card, Phillips made withdrawals of $100, $2,000 and $7,000.

■■ Appellant asserts that the foregoing evidence is not sufficient to support the verdict. We think such a contention merits but little discussion. Under the terms of 18 U.S.C.A. § 2 [3] appellant, having caused or procured Ferraro to make the false entry, became a principal in the violation of 18 U.S.C.A. § 1005, to the same extent as though he actually had made the false entry. That a false entry was made in the records of the bank is abundantly established and that in itself is prima facie evidence of intent to defraud. This presumption is buttressed by evidence of numerous acts on the part of Phillips and Ferraro perpetrated in furtherance of the conspiracy and the plan to defraud.

■ Ferraro was originally indicted with appellant. However, at the trial he was a witness for the Government and before testifying the indictment against him was dismissed. Appellant now contends that the United States, by dismissing the charges against Ferraro who actually made the entry, rendered itself incapable of prosecuting appellant. In support of this contention appellant cites Bartkus v. United States, 7 Cir., 1927, 21 F.2d 425. This case held that where the evidence is insufficient to show that

someone else participated in a plan of the defendant, a conspiracy count could not stand since a person cannot conspire with himself. We have no such situation here. Voluntary dismissal of an indictment against a co-conspirator or co-defendant, whom the evidence establishes to be such a party, is significantly different from the dismissal of an indictment against a co-conspirator on the ground that there is insufficient evidence of his participation. There is abundant evidence here that appellant and Ferraro participated in a common plan to make a false entry and that both participated in the commission of the offenses.

■ Appellant says that: "Count two fails to charge an offense against the laws of the United States in that the charging part of the indictment fails to charge appellant with the crime of conspiracy." Count two of the indictment charges as follows: "Beginning on or about February 18, 1953, and continuing to March 1, 1953, the defendants William Ross Phillips and Salvatore Anthony Ferraro did agree, confederate, and conspire to commit an offense against the United States as follows: defendant Salvatore Anthony Ferraro, an employee of the Bank of America, National Trust and Savings Association, Western and Santa Monica Branch, Los Angeles, California, would make a false entry on a savings ledger card for the account of defendant William Ross Phillips showing the deposit of $10,000.00 to said account, with the intent to injure and defraud said bank which was then and there a member of the Federal Reserve Bank of San Francisco * * *." This count further specifies the means by which the object of the conspiracy was accomplished.

It seems clear that the charge is a conspiracy to make a false entry in the records of a federal reserve member bank with intent to defraud. The indictment

3. 18 U.S.C.A. § 2 provides as follows:
"§ 2. Principals
"(a) Whoever commits an offense against the United States, or aids, abets, counsels, commands, induces, or procures its commission, is a principal.

"(b) Whoever causes an act to be done, which if directly performed by him would be an offense against the United States, is also a principal and punishable as such."

spells out a complete offense with sufficient particularity to enable all who read to understand.

█ A ruling of the trial court which excluded evidence that Ferraro evaded the draft is complained of. It is argued that such evidence was admissible as to Ferraro's motive in testifying against appellant. Appellant's theory is that such evidence would tend to show that Ferraro needed money for a flight to evade the draft, and that he took for this purpose money which appellant had deposited and then attempted to implicate appellant in order to cover his defalcation. This theory is advanced for the first time on this appeal. It was not raised in the trial court, presumably because it is totally inconsistent with the theory of the defense in the trial court, to wit, that appellant had deposited money and then withdrawn it as a matter of right. We find no error here. The question had no other purpose than to bring in an irrelevant matter. The effect which appellant now argues it could have had falls flat in the face of the fact established by the bank records that Phillips withdrew the money.

Appellant was tried twice. At the first trial Miss Althea Hale testified as a witness on behalf of appellant. This trial resulted in a hung jury. The second trial resulted in a conviction. At the first trial Miss Hale testified that she gave $10,000 to appellant to deposit in the bank on the day on which an entry in that amount was made to his account and that she had met him at the bank for the purpose of making the deposit. At the second trial Miss Hale testified that she had not given appellant $10,000 on the date in question nor had she met him at the bank. With respect to her testimony at the first trial Miss Hale said: "I think that it was under duress that I made such a statement." She testified that she had not been improperly influenced by the F.B.I. to change the testimony she gave at the first trial but had voluntarily gone to the F.B.I. some time after the first trial to correct a mistake.

When Miss Hale in open court repudiated the testimony she gave at the first trial, the court, out of the hearing of the jury, recommended that appellant be prosecuted for subornation of perjury. At that time the court also raised appellant's bail on the original charge from $2,500 to $10,000 and set bail at $7,500 in connection with the recommended subornation of perjury charge. This act of raising bail, contends appellant, prejudiced him and prevented his getting a fair trial. The contention made in this respect is that increasing bail to the sum of $10,000 was unreasonable. That by so doing the trial court improperly interfered with appellant's efforts to prepare his defense in the securing and interviewing of witnesses, who would have testified that Miss Hale's testimony at the first, rather than the second, trial was the truth, this because appellant was unable to furnish the increased bail and was therefore incarcerated.

Appellant had ample opportunity to prepare any legitimate defense he may have had. The assistance of the trial court and the United States attorney in securing the presence of witnesses was proffered. This offer was declined. Appellant refused to furnish a list of alleged witnesses to his counsel, or to the police, or the United States attorney, or the F.B.I. No reason appears why appellant's counsel could not have interviewed the proposed witnesses. In fact he was the proper party to have been entrusted with that responsibility. Appellant was deprived of no right that he could not have asserted through available and competent representatives.

█ Appellant seriously insists that the trial court should have granted him a new trial. His chief complaint before us is that witness Hale executed an affidavit after the conclusion of the second trial to the effect that the testimony given by her at said second trial was induced by improper influence exerted by government officials. A look at the record discloses that we are not called upon to express an opinion as to what the trial court should have done had

the affidavit made by this vacillating and untrustworthy witness been presented to the court in support of the motion for new trial.

The motion for new trial was filed on February 15, 1954 and denied by the court on February 23, 1954, and judgment rendered that day. A notice of appeal to this court was filed February 26, 1954. The affidavit of Miss Hale, upon which appellant relies, was filed April 5, 1954 and evidently executed on March 30, 1954. This affidavit seems to have been presented to the trial court only in connection with a motion for bail pending appeal which said motion was denied by the trial court on April 19, 1954. We have diligently searched the record to ascertain whether an additional affidavit had been executed by Miss Hale but failed to find one. We are convinced that appellant is confused as to the state of the record. Surely he would not argue that an affidavit made several weeks after a motion for new trial was disposed of could be considered by us in determining whether the trial court erred in denying the motion.

Judgment affirmed.