**FOSTER et al. v. UNITED STATES.**
**BUESCHER v. SAME.**
Nos. 12904, 12905.

Circuit Court of Appeals, Eighth Circuit.

Dec. 26, 1944.

874

Don K. Walter and John Hale, both of Burlington, Iowa, for appellants.

Kelsey Martin Mott, Atty., Department of Justice, of Washington, D. C. (Norman M. Littell, Asst. Atty. Gen., Daniel F. Steck, Sp. Asst. to Atty. Gen., and Vernon L. Wilkinson, Atty., Department of Justice, of Washington, D. C., on the brief), for appellee.

Before GARDNER, WOODROUGH, and JOHNSEN, Circuit Judges.

GARDNER, Circuit Judge.

These two appeals are from judgments determining the just compensation for the taking of properties of the appellants by the government for an ordnance plant in Des Moines County, Iowa. Separate proceedings were brought by the United States, one to condemn 235 acres of land owned by Bertha B. Foster and W. E. Foster, and one to condemn 132.25 acres of land owned by Henry C. Buescher. The suits were consolidated for trial and are consolidated on appeal though a separate judgment was entered in each case. The proceedings have been twice tried and twice appealed. On the first trial damages for the taking of the Foster lands were assessed by the jury at $42,000, while damages for the taking of the Buescher lands were assessed by the jury at $31,250. On appeal by the government we reversed because we were of the view that the trial court should not have permitted proof as to alleged industrial value of the land which might result from the establishment by the government of the ordnance plant for which the lands were being taken and because the court permitted evidence of prices paid by the government for other lands secured for this same project in an attempt to avoid litigation. United States v. Foster, 8 Cir., 131 F.2d 3. On the second trial, resulting in judgments from which the present appeals are prosecuted, damages for the taking of the Foster lands were fixed at $31,365, and for the taking of the Buescher land at $21,250.

Appellants seek reversal on substantially the following grounds: (1) The court erred in refusing to permit the introduction of the testimony of C. F. Bell to rebut testimony of government witness John J. Wagner to the effect that he had not made two appraisals of the lands taken; (2) the court erred in permitting counsel for the government to cross-examine defendant Buescher as to the amount originally contracted to be paid for his farm in 1931 and as to the amount ultimately paid for it in 1934; (3) the court erred in permitting government counsel to cross-examine defendant W. E. Foster as to the value placed on his lands in an offer to exchange them for other property; (4) the court erred in permitting a witness for the government to testify as to the market value of the Foster and Buescher lands; (5) the court erred in striking the answer of Bertha B. Foster to the effect that she and her husband had $48,811 invested in the property taken; (6) the court erred in refusing to grant a new trial on the ground that the verdict in each case was inadequate.

John J. Wagner, called as a witness by the government, testified that he had made an appraisal of the lands involved for the Department of Justice as of the date of taking. He also testified that he had made an inspection of the ordnance plant area for the War Department in the fall of 1940. On cross-examination he stated that the purpose of his inspection was to enable him to give professional advice to the officer in charge of land in the Quartermaster Department to guide him in making purchases and in his negotiations for the acquisition of lands for the ordnance plant. On re-direct examination he testified that his instructions were to make recommendations for settlement with the land owners, which recommendations should include an estimate of the possible loss which the owners might sustain by reason of the necessity of selling their personal property, and that these estimates varied from 15 to 25 per cent above the fair market values of the lands. On recross examination he stated that he had given no accurate quotation of fair cash market value at that time.

In this state of the record defendants offered in rebuttal the witness C. F. Bell, who had accompanied the witness Wagner during the original inspection of all lands in the area. Defendants offered to prove by this witness that Wagner had in fact made an appraisal of the fair market value of these two farms at that time. The witness, having testified that he was employed by Mr. John J. Wagner to make appraisal of the property in the ordnance plant area, was then asked:

"Q. How many properties in the Ordnance Plant area did you appraise pursuant to that employment?

"Objected to as incompetent, irrelevant and immaterial; not rebuttal.

"The Court: I don't see how this could be rebuttal. What are you trying to get at, Mr. Hale?

"Mr. Hale: I wasn't going to ask him anything about values Your Honor. He is being put on to rebut testimony adduced yesterday that there were no appraisals except the Foster and Buescher farms.

"The Court: No appraisements, but that is to other appraisers. You didn't lay the ground for any impeachment. It would seem to me in analyzing it, whether they did make another appraisement which you were asking about, which they denied, it would be only evidence affecting the credibility. It wasn't substantive evidence as to valuation. You can't impeach as to immaterial matters brought out on cross examination."

The effect of the court's ruling was that defendant could not disprove by this witness statements elicited on cross-examination concerning collateral matters in order to discredit the witness Wagner. Wagner categorically denied on cross-examination that an estimate of the fair market value had been made by him during the preliminary negotiations for the War Department. Whether he had or had not was not material to the issue. He was not asked as to any specific statements or declarations that he had made, nor was there any attempt to show that such statements, if any, were false or inaccurate. Where a witness is asked concerning a collateral matter on cross-examination, the party cross-examining is bound by the witness' answer. Northern Pac. Ry. Co. v. Heaton, 8 Cir., 191 F. 24; Quillen v. Lessenger, 190 Iowa 939, 181 N.W. 8. As has been observed, the original estimates made by Wagner were not confined to the fair market value of the property. He included other items intended to cover losses incident to the resulting necessity of selling personal property by the landowners. These are, of course, not elements to be included in fixing fair market value. We are clear that it was not reversible error to reject the proffered testimony.

Defendant Buescher was asked by government counsel on cross-examination as to the price which he had paid for his farm in 1932. This was objected to as incompetent, irrelevant and immaterial and so remote as to have no bearing on the issues involved. In ruling on the matter, the court observed:

"1932. That was at the bottom of the depression, wasn't it? Well, we will take it for what it is worth. The jury will understand the conditions I guess."

The sale was remote but that went to the weight of the evidence rather than to its admissibility. Much must be left to the discretion of the trial court in the matter of admitting evidence going to the question of value. United States v. Becktold Co., 8 Cir., 129 F.2d 473. The witness had testified on direct and on cross-examination that his farm when he acquired it was in a run down condition; that he had spent a great deal of money in

improvements, such as a house, windmill, fences, improvements to the barn and other betterments, and that its market value at the time of the taking was $38,000. The testimony showed that conditions had changed in the interval between the sale and the date of taking. This question was asked on cross-examination and the admission of this testimony could not in the circumstances here disclosed have been prejudicial.

Defendant W. E. Foster testified that the fair market value of his farm at the date of taking was $50,000. On cross-examination he was asked whether within the past three or four years he had not listed his farm for sale with a real estate broker. He testified that he had listed it for trade. He was then asked: "What value per acre did you place on this listing for trading purpose?" This was objected to as incompetent, irrelevant and immaterial, and improper cross-examination. The objection was overruled and the witness answered:

"They put the price on, they set the price of $125.00, but they were to replace it with a place of the same kind of land and the same kind of buildings, and all the same price. We didn't set no price, only they said they would set that price and they had to give us the same kind of buildings and the same kind of set-up."

■■ There was apparently no motion to strike the testimony. It was not strictly responsive because according to the witness he had not placed a price of $125 per acre on the property, and he testified on re-direct examination that the agent was not authorized to make a sale for cash, but that "it was to be for trade." The question clearly called for pertinent and material evidence. The answer may not have been material, but there was no motion to strike it out. Being fully explained, it was not, we think, prejudicial. It is urged that the testimony was inadmissible as to Mrs. Foster, who was joint owner of the property. That objection, however, was not interposed, although Mrs. Foster was personally present and represented by counsel. The trial court was entitled to know and to have presented the ground of defendant's objection to this testimony, and other grounds or objections can not for the first time be urged on appeal. Cockrell v. United States, 8 Cir., 74 F.2d 151; United States v. Nickle, 8 Cir., 70 F.2d 873.

The government called one Carroll Redfern to testify as to the fair market value of the lands involved. He was a real estate broker, had grown up on a farm in Des Moines County, Iowa, had sold twenty or twenty-five farms in that county; he had seen and visited the Foster farm late in 1940 or early in 1941, was generally familiar with it before the date of the taking, including the timber tracts, although he had not gone over the timber tracts until after the taking. On cross-examination he testified that he knew what changes had been made in the farm; that twenty acres of timber had not been touched; that he could give an estimate of the value of the Foster farm as of the date of the taking from his knowledge of the changes and his memory of what the place used to look like. Relative to the Buescher farm he also testified that he was generally familiar with its location in the fall of 1940; he had visited it at that time and knew what slight changes had taken place between the date of the taking, May 28, 1941, and the date when he became thoroughly familiar with it in October, 1941; he had assisted in removing the fences from the farm. He was then asked:

"Mr. Redfern, from your general acquaintance and knowledge of the Bertha and Will Foster farm as you knew it to be on January 21, 1941, and basing your answer upon your experience and knowledge of land values generally in this vicinity, and excluding from your consideration any increase or decrease in value that may have been occasioned by the location of the Iowa Ordnance Plant, what, in your opinion, was the fair and reasonable cash market value of the entire 235 acre Foster farm, as you knew it?

"Mr. Hale: Objected to as incompetent, irrelevant and immaterial; the witness is incompetent, he having testified he is not familiar with all of the farm."

The witness then testified: "I noticed the timber marked on the plat. I have seen both of the timber tracts. I was familiar with them as of January 21, 1941. The only knowledge of them is what I have derived since that time."

The objection was renewed and the court in its ruling said: "We will take it for what it is worth. The jury understands the situation, I guess."

■■ The witness placed the value at $22,750. He gave similar testimony with

reference to his familiarity with the Buescher farm, and over objection he was permitted to testify as to his opinion as to the value of that land. The qualification of a witness to testify to an opinion as to the value of real property is a matter to be determined by the trial judge, and his decision on this question will not ordinarily be disturbed unless clearly erroneous. Love v. United States, 8 Cir., 141 F.2d 981; Union Trust Co. of Cleveland, Ohio v. Woodrow Mfg. Co., 8 Cir., 63 F.2d 602. We can not say that the ruling of the judge as to the qualification of this witness was clearly erroneous. The matters urged went to the weight of his testimony rather than to the qualification of the witness.

Bertha B. Foster was examined as a witness relative to matters going to the character of the land and her familiarity with it. She was then asked:

"Mrs. Foster, having lived on the place all your life, or substantially all your life, what would you say the reasonable cash market value was, excluding any increase or decrease which might have come about as a result of the establishment of the Iowa Ordnance Plant, as of January 21, 1941? A. Well, we had $48,811.00 into it."

On motion the answer was stricken as not responsive and not the proper measure of compensation. She was then asked:

"Maybe you didn't understand. I didn't ask you how much you had in it. How much do you think it was worth January 21, 1941? A. $51,000.00."

It is now urged that it was error to strike out the answer of the witness to the effect that, "We had $48,811 into it," because the purchase price in 1926 was proper evidence as to value. The witness, however, was not asked as to the purchase price, nor did she testify as to the purchase price. She was asked as to the market value. Her answer was, "We had $48,811.00 into it." Recognizing that the witness had not answered his question, counsel thereafter again asked her how much she thought the property was worth January 21, 1941, and she then testified as to her opinion of the value. When she gave her opinion as to the value of the land, she answered the question which had previously been put to her. It is urged that

the objection that an answer is not responsive is open only to the party who propounds the question. Whatever the rule in Iowa may be on this question of practice, it is clear that the court could have stricken this voluntary statement on its own motion. Having granted the motion, the question of its sufficiency is not before us if the testimony was properly stricken. United States v. Nickle, supra. There was no error in this ruling.

It is finally urged that the court erred in not setting aside the verdicts because they were grossly inadequate. The government witnesses fixed the value of the Foster farm at from $21,625 to $25,000. Witnesses for the defendants, on the other hand, fixed its value at from $41,050 to $51,000. The jury determined the value at $31,365. As to the Buescher farm, government witnesses fixed the value from $13,500 to $19,100, while witnesses for the defendant fixed its value at from $33,625 to $39,025, and the jury determined the value at $21,250. The value so determined by the jury was within the scope of the testimony, and hence, it is sustained by substantial evidence. We do not pass upon the weight of the evidence, and the trial court has denied defendant's motion for a new trial. In these circumstances, the verdicts, being supported by substantial evidence, even though there may be a conflict in the evidence, must be sustained. Ramming Real Estate Co. v. United States, 8 Cir., 122 F.2d 892; Love v. United States, supra; O'Donnell v. United States, 8 Cir., 131 F.2d 882. The contention that the verdicts are grossly inadequate because less than the owners' investment in the lands, if that be a fact, is unsound. The question was the fair value of the property. This might be more or it might be less than the owners' investment. As said by the Supreme Court in Olson v. United States, 292 U.S. 246, 54 S.Ct. 704, 708, 78 L.Ed. 1236:

"The public may not by any means confiscate the benefits, or be required to bear the burden, of the owner's bargain."

The court in effect in this case so charged the jury and no exception is urged to the instruction. The contention is, we think, wholly without merit.

The judgments appealed from are therefore affirmed.