CWACH v. UNITED STATES.

BATSELL v. UNITED STATES.

MOORE v. UNITED STATES.

Nos. 14878, 14887, 14888.

United States Court of Appeals
Eighth Circuit.
April 29, 1954.

Clarence W. Button, Denver, Colo., for appellant Cwach.

E. C. Mogren, St. Paul, Minn., for appellants Batsell and Moore.

Alex Dim, Asst. U. S. Atty., St. Paul, Minn. (George E. MacKinnon, U. S. Atty., St. Paul, Minn., on the brief), for appellee.

Before GARDNER, Chief Judge, and WOODROUGH and COLLET, Circuit Judges.

WOODROUGH, Circuit Judge.

Defendants Cwach, Batsell, and Moore were jointly indicted, tried, and convicted of violation of Section 2 of the Mann Act, 18 U.S.C.A. § 2422, and of conspiring to violate said Act, 18 U.S.C.A. § 371. Defendant Batsell was also convicted of violating Section 1 of the Mann Act, 18 U.S.C.A. § 2421.

Count I of the indictment charged that,

"On or about the 19th day of December, 1951, Frank Batsell, also known as Frank Batsel, Clifford Eugene Moore, George Sutton, and Frances Cwach, did knowingly persuade, induce and entice a woman to travel by common carrier, to wit: a bus, from Minneapolis, * * * Minnesota, to Sioux Falls, South Dakota, for the purpose of having the said woman engage in the practice of prostitution, debauchery and other immoral practices", in violation of 18 U.S.C.A., Section 2422.

Count II of the indictment charged, under 18 U.S.C.A. § 2421, that defendant Batsell, on or about December 19, 1951, did knowingly procure a bus ticket for the use of a woman to travel in interstate commerce from Minneapolis, Minnesota, to Sioux Falls, South Dakota, for the purpose of having said woman engage in the practice of prostitution, debauchery and other immoral practices.

In Count III of the indictment it was charged that the four named defendants, on or about December 19, 1951, "did conspire to persuade, induce and entice" a woman to travel by common carrier from Minneapolis to Sioux Falls for the purpose of having said woman engage in the practice of prostitution, debauchery and other immoral practices, in violation of Section 371, 18 U.S.C.A. Section 371.

The indictment alleged the following overt acts were committed in furtherance of the conspiracy charged in Count III:

"1. On or about the 19th day of December, 1951, the defendant Clifford Eugene Moore placed a long distance telephone call from Minneapolis, Minnesota to Sioux Falls, South Dakota.

"2. On or about the 19th day of December, 1951, defendant Frank Batsell, also known as Frank Batsel, drove in an automobile a certain woman from or in the vicinity of 704 Humboldt Ave. North, Minneapolis, Minnesota, to the Greyhound Bus Depot at 7th Street and First Ave. North, Minneapolis, Minnesota.

"3. On or about the 19th day of December, 1951, the defendant Frank Batsell, * * *, purchased a ticket on a common carrier for the use of a certain woman to travel from Minneapolis, Minnesota, to Sioux Falls, South Dakota."

Considering the evidence in the light most favorable to the government, as we must, Shama v. U. S., 8 Cir., 1936, 94 F.2d 1, the following facts appear from the record. Gloria Jordell, the principal witness for the prosecution, was the girl

friend of defendant Frank Batsell. For some months prior to the date of the alleged offenses, she had been living with Batsell in Minneapolis and supporting both of them from her earnings as a prostitute. At the time of trial of this case she was serving a one-year sentence in the Minneapolis Workhouse for sodomy. She testified that on December 18, 1951, she and defendant Batsell were sitting in a car parked near Howard's Steak House on Olson Highway in Minneapolis. At about 6:00 o'clock in the evening of that day they met defendants Moore and Sutton there. The testimony was that a conversation took place between the witness and the three defendants concerning the "hustling" business and different girls engaged therein. Defendant Moore's wife had formerly worked as a prostitute in Sioux Falls, South Dakota, and defendant Sutton's girl friend, Bonnie LeDay, was then engaged in that occupation there but wished to return to Minneapolis for the Christmas holidays. The defendants asked the witness, Gloria Jordell, if she would go to Sioux Falls as a replacement for Bonnie LeDay for several days. At first she demurred, saying that she had never worked in a house of prostitution before. The defendants, however, convinced her everything would be all right and she finally consented to make the trip. Whereupon, the testimony shows, the group drove to Sutton's home in Minneapolis where, sometime between 8:00 and 10:00 P.M., defendant Sutton placed a long distance telephone call to Number 2–3323 in Sioux Falls, South Dakota. Sutton asked to speak to Bonnie and, after telling her that he was sending Gloria Jordell to Sioux Falls as her replacement for a few days, handed the phone to the witness Jordell who also talked to Bonnie for a few minutes. Sutton then asked to speak to Fran. Sutton asked Fran if it would be all right to send Gloria Jordell to Sioux Falls as Bonnie LeDay's replacement for several days. When Sutton finished speaking to Fran, the witness Jordell talked to her. The witness testified that she told Fran she had never worked in a house of prostitution before and was afraid to come to Sioux Falls. After assuring her that everything would be all right and that she would get along fine, Fran gave the witness a telephone number and address and told her to call as soon as she arrived in Sioux Falls. The evidence further shows that the next day, December 19, 1951, defendant Batsell drove the witness to the bus depot in Minneapolis where he purchased her a ticket to Sioux Falls. The witness arrived in Sioux Falls late that evening, called the number given her by Fran, and was told to come to Frances Rooms, a house of prostitution operated by defendant Frances Cwach. There she met defendant Frances Cwach, Bonnie LeDay, and another girl Virginia Beck. The witness signed the register book, giving her address as Huron, South Dakota, after being advised by defendant Cwach to name some small town in South Dakota as her residence. Bonnie LeDay left shortly thereafter for Minneapolis and the witness worked as a prostitute for several days in Frances Rooms.

The records of the Minneapolis telephone company introduced in evidence showed that a long distance telephone call had been made at 10:00 P.M. on December 18, 1951, from 81 Hoag Ave., Minneapolis, the home of defendant Sutton, to Number 2–3323 in Sioux Falls, South Dakota. Records of the Sioux Falls telephone company showed that Number 2–3323 was the telephone number of Frances Rooms and was listed or charged to defendant Frances Cwach.

Each of the defendants took the stand and denied the occurrence of the alleged telephone call on the evening of December 18, 1951. Although Frances Cwach admitted Gloria Jordell worked at Frances Rooms for several days beginning December 19, 1951, her defense, as well as that of the other defendants, was that the witness, a confessed prostitute, had voluntarily gone there to practice her art, without any persuasion, inducement, or enticement on the part of any of the

defendants. Defendant Batsell also denied purchasing a bus ticket for the use of Gloria Jordell in making the trip to Sioux Falls, as charged in Count II of the indictment. Thus the jury was presented with the issues to be resolved. Verdicts were returned against each defendant on each count charged. Defendant Sutton has not appealed from his conviction and sentence.

Defendants Batsell and Moore have filed a short brief in this court, incorporating by reference, insofar as applicable, the arguments and authorities contained in the brief of defendant Cwach. Our discussion will include all of the defendants who have appealed, unless otherwise noted.

Defendant Cwach's first assignment of error is the admission into evidence of testimony concerning the telephone conversation of December 18, 1951. Her argument is: first, that no proper foundation was laid for the admission of such testimony because there was no identification of her as the person with whom Gloria Jordell conversed; and second, such testimony was hearsay as to this defendant.

■■■ At the time of the alleged telephone conversation, the witness Jordell had never met Frances Cwach or talked to her on a telephone. Identification of the voice, however, is not a prerequisite to the admissibility of a telephone conversation. Andrews v. U. S., 10 Cir., 1935, 78 F.2d 274, 105 A.L.R. 322; 20 Am.Jur., Evidence, sec. 366. Identity of the person with whom the conversation is alleged to have been had may be established by circumstantial evidence. Testimony and documentary evidence subsequently introduced conclusively established that defendant Cwach was the person with whom Sutton and Jordell conversed on the night of December 18, 1951. The address and phone number given Gloria Jordell by Fran was the address and phone number of defendant Cwach's place of business in Sioux Falls. Records of the telephone company proved that a call was placed and a fifteen minute conversation ensued at or near the time and from the place testified to. Upon arriving at Frances Rooms, Jordell testified that defendant Cwach greeted her with the words, "I was expecting you." Virginia Beck testified that prior to Gloria Jordell's arrival on December 19th, she heard Bonnie LeDay remark about the phone call and discuss her replacement with defendant Cwach. She also corroborated Jordell's testimony that Bonnie LeDay left Frances Rooms shortly after Jordell arrived. These circumstances were sufficient to establish the identity of defendant Cwach as the person with whom the telephone conversation was had. Andrews v. U. S., supra.

■■ Nor is it a valid objection that the testimony was admitted prior to the identification of defendant Cwach. The order of proof in a conspiracy case is a matter wholly within the discretion of the trial court. Braatelien v. U. S., 8 Cir., 1945, 147 F.2d 888, and cases cited.

■ The argument that the testimony should have been excluded under the hearsay rule must also be rejected. The rule is now settled that the declaration of one co-conspirator, made in furtherance of the conspiracy, is admissible against other co-conspirators not present when the declaration is made. Lutwak v. U. S., 344 U.S. 604, 73 S.Ct. 481, 97 L.Ed. 593; U. S. v. United States Gypsum Co., 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746; Braatelien v. U. S., supra. Admittedly, the testimony was admissible against Sutton. Since the conspiracy was established prima facie, and the declarations were made in furtherance thereof, they were admissible as against each of the defendants.

■ Prior to trial defendant Cwach filed a motion to sever, alleging as grounds therefor that certain evidence admissible against other defendants was not admissible against her. The motion was denied. On motion for judgment of acquittal, or in the alternative for a new trial, one of the grounds assigned was that the court erred in denying the motion to sever. On

argument of the motion defendant Cwach charged she should have been granted a separate hearing because of racial prejudice present at the trial. Defendant Cwach is a white woman while the other defendants are Negro men and it is her contention that the jury could not possibly view the evidence in a fair and impartial manner under such circumstances. Passing the procedural question of whether failure to make timely objection constituted a waiver of this ground, the record is devoid of any circumstance even suggesting the verdicts were tainted by racial prejudice. The only indication that racial prejudice was involved in this case is gleaned from defendants' brief in this court, in which it is stated,

"Newspaper accounts over a period of the last ten years report many riots and uprisings between whites and Negroes in this particular section [Minneapolis, Minnesota] of the United States. The feeling is extremely bitter."

To rebut this charge the government has put into the record the affidavit of a Minneapolis newspaperman who states that, after diligent search and inquiry, he has been unable to locate a single newspaper account reporting riots and uprisings between whites and Negroes in Minneapolis during the past ten years. With the record thus barren of affirmative proof that racial prejudice and bias attended the trial, the ruling of the trial court must stand. The granting or denial of a motion to sever rests in the sound judicial discretion of the trial court, and unless that discretion is abused, the ruling will not be disturbed on appeal. McDonald v. U. S., 8 Cir., 1937, 89 F.2d 128. We find no abuse of discretion here.

■ Respecting the original grounds upon which defendant Cwach's motion to sever was based, her remedy, if in fact certain evidence was admissible as to other defendants but not as to her, was to request the court to limit the jury's consideration of such evidence to the particular defendant against whom it was properly admitted. See Malatkofski v. U. S., 1 Cir., 1950, 179 F.2d 905.

■ Defendants also predicate error upon the court's refusal, after request, to instruct and admonish the jury during the course of the trial to refrain from reading newspaper accounts and listening to radio reports of the trial. The record contains the following general admonition given by the court immediately after the jury was impanelled:

"Ladies and Gentlemen, I know you have all been instructed heretofore as to what your duties are. I am not going to repeat that except to say that your primary obligation, of course, is to listen carefully so that you will hear all the testimony that is given; nor should you make up your minds at any stage of the proceedings as to how the case should go. You must not let anybody talk to you, and if they attempt to talk to you, you tell them you are a juror and you cannot discuss the matter. If anybody persists in the effort to talk to you, ascertain their name, if you can, and give it to me; nor should you, until the entire case is submitted to you, even attempt to reach a conclusion, and you shouldn't discuss it among yourselves. The place for discussion of the evidence is in the jury room. Please keep these admonitions in mind."

This cautionary instruction, though it did not specifically mention newspaper articles and radio reports, adequately informed the jury that they were to consider only evidence introduced in the trial of the case in reaching their verdict. Whether the admonition should have been repeated during the trial was a matter to be determined by the court during the progress of the hearing. Several newspaper articles written about the trial were put into the record, but there is no showing that such articles were read by members of the jury or in any manner influenced their decision. Since the giving of such instructions is discretionary with the court and there is

no showing that the court abused its discretion in this instance, defendants' assignment of error may not be sustained.

Defendants contend that the verdicts are not supported by substantial evidence and therefore the court erred in overruling their several motions for directed verdicts and judgments of acquittal. This contention is clearly without merit. The testimony of government witnesses, if believed, overwhelmingly established defendants' guilt, both on the substantive counts and the conspiracy charge. The credibility of the witnesses and the weight to be given their testimony was a matter within the province of the jury. It chose to believe the prosecution's witnesses rather than the defendants'. The verdict of the jury, based on substantial evidence, is conclusive unless reversible error is shown in the record.

Defendant Cwach argues that the evidence was insufficient to show that she induced, enticed, or persuaded Gloria Jordell to come from Minneapolis to Sioux Falls to engage in the practice of prostitution. With respect to the question of inducement, Gloria Jordell testified on cross-examination:

"Q. All right. Now, at the time you had that telephone conversation you had been talking to Sutton, Batsell and Moore for all of that evening, is that correct? A. Not all evening, I would say maybe two or three hours.

"Q. Two or three hours, and it was decided that you would go down to Sioux Falls, is that correct? A. That's correct.

"Q. And your decision had been made? A. Yes.

"Q. And then a phone call was placed, is that correct? A. I hadn't made up my mind until I talked on the phone.

"Q. Well, you stated that your decision had been made. Now, what is the Court and jury to believe? A. I wasn't sure I could even get into Frances' place at Sioux Falls.

"Q. In other words, you were going down there if she would have you, is that correct? A. Yes, that's correct.

"Q. So the decision for you to go had been made prior to the phone call? A. If I could get in, yes."

Together with the direct testimony of the witness that defendant Cwach assured her that she would get along fine working in a house of prostitution, we think this evidence clearly warranted the jury in finding that defendant Cwach induced, enticed, or persuaded Gloria Jordell to travel in interstate commerce for the purpose of prostitution. A conviction has been sustained under the Act where, as part of the inducement, the defendant gave assurance of a place and a means to practice. Schrader v. U. S., 8 Cir., 1938, 94 F.2d 926; U. S. v. Sorrentino, D.C.Pa., 1948, 78 F.Supp. 425; affirmed 3 Cir., 1949, 175 F.2d 721.

At the beginning of each session of the trial, defendants Moore and Batsell were brought into the courtroom in handcuffs. The handcuffs were removed in the presence of the jury. Defendants contend that the sanction of such practice by the court deprived them of a fair and impartial trial. A similar contention was passed upon by this court in McDonald v. U. S., supra [89 F.2d 136], where it was said:

"It is too obvious for argument that hardly any other matter can better be relegated to the discretion of the trial court than that of safeguarding the court, counsel, jury, and spectators, and assuring the continued presence and attendance of the accused at the trial. Absent incontrovertible evidence of hurt, the trial court should be permitted to use such means, to secure the named ends, as the nature of the case, the known criminal record, character, associates in crime, and reputation of the accused shall reasonably call for, and such is the rule enunciated in the few cases existing which deal with the question, even

when raised by one who had been himself handcuffed on his trial (citing cases)".

The record shows that defendant Batsell was arrested in Wichita, Kansas, and returned to Minneapolis for trial. Defendant Moore had previously been convicted on a White Slavery charge. We are informed by government counsel that federal prisoners are confined several blocks distant from the Court House where this trial was held. Applying the rule in the McDonald case, supra, we do not think the court acted unreasonably in this case.

On February 5, 1953, defendant Moore, represented by counsel, pleaded guilty before Honorable Gunnar H. Nordbye, Chief Judge, to the 1st Count of the indictment herein. On April 24, 1953, represented by different counsel, defendant Moore filed a motion before Judge Nordbye to withdraw his plea of guilty and enter a plea of not guilty. The motion was still pending at the commencement of this trial before Honorable Matthew M. Joyce, Judge, on April 27, 1953, whereupon the following proceedings were had:

"The Court: On the calendar for trial this morning is the matter of the United States of America v. Frank Batsell, Clifford Eugene Moore, George Sutton and Frances Cwach. Is the government ready for trial?

"Mr. Dim: Yes, your Honor, the Government is ready. I understand there is a motion for Clifford Eugene Moore to withdraw his plea of guilty and he now wishes to plead not guilty.

"Mr. Mogren: That's correct, your Honor. I made the motion a few days ago. Judge Nordbye took the papers and I think filed them. It hasn't been heard yet, but we ask the Court permission to withdraw his plea of guilty.

"Mr. Dim: Your Honor, the Government has not been served with that motion, but we have no objection, * * * we would like to have the record show that Moore was represented by * * * a very able and competent attorney and voluntarily * * * after being duly advised of all the facts and circumstances * * * pleaded guilty.

"The Court: The order will be made. He may withdraw his plea of guilty to one of not guilty.

"Mr. Mogren: I don't think that statement should have been made in front of prospective jurors. * *.

"The Court: That's what the record shows."

Defendants complain that the trial court erred in permitting the jury to learn that defendant Moore had previously pleaded guilty and now wished to change his plea to not guilty. We are not so convinced. A motion to withdraw a plea of guilty and enter a plea of not guilty is addressed to the sound discretion of the trial court. Williams v. U. S., 5 Cir., 1951, 192 F.2d 39. It was incumbent upon defendant Moore to secure a timely ruling, before trial, on the merits of the motion. Nor can the other defendants complain. They had been jointly indicted and knew they were to be jointly tried. The date defendant Cwach's motion to sever was denied does not appear in the record but presumably it was some time before the trial commenced, as the motion was filed February 20, 1953, over two months before the trial. The defendants cannot now predicate error upon their own failure to secure a timely ruling upon defendant Moore's motion to change pleas. The trial court was confronted with the motion at the beginning of the trial and it had to be disposed of before the hearing could proceed. We find no error in the action taken by the court in sustaining the motion. Authorities cited by defendants, holding generally that evidence of a plea of guilty, which has been withdrawn, is not admissible in a subsequent trial on the same charge, are not applicable here. There was no attempt

by the prosecution in this case to put defendant Moore's plea of guilty into evidence as proof of defendants' guilt, or to secure a jury instruction with respect to it. Accordingly, the assignment is not sustained.

■ Defendants also assign error on the trial court's refusal to dismiss the jury panel because some of its members had previously passed on the credibility of witness Gloria Jordell in a Mann Act case involving other defendants. The record shows that she had testified in a so-called White Slavery case in March, 1953, and that two of the jurors who sat in that case were called in the present case. Defendants used six of the ten peremptory challenges allowed and struck one of these two jurors, leaving the other one remain on the jury. There is no showing that this juror entertained any preconceived convictions as to the credibility of witness Jordell which might have been unfavorable to the defendants. The existence of prejudice cannot be presumed. In Haussener v. U. S., 8 Cir., 1925, 4 F.2d 884, a case involving prosecutions under the National Prohibition Act, it was held that the fact that five of the jurors had previously sat in similar cases against other defendants, wherein the same government witnesses testified, was insufficient to disqualify them absent a showing that their attitude was such as to preclude a fair and impartial trial. No attempt having been made to show the juror in this case was biased or prejudiced by reason of having heard Gloria Jordell testify previously, the ruling of the trial court is sustained.

■ Defendants contend that the court also erred in instructing the jury, relative to the conspiracy charge, that the telephone call heretofore referred to could have been made on either December 18th or 19th, 1951, when in fact the indictment alleged it was made "on or about the 19th day of December, 1951". There is no error in this instruction. The law is clear that where time is not an essential element of the crime, as here, proof that the crime was committed on a day other than that alleged, if it be within the period of limitations and before the indictment is laid, is sufficient. Butler v. U. S., 10 Cir., 1952, 197 F.2d 561; Ledbetter v. U. S., 170 U.S. 606, 18 S.Ct. 774, 42 L.Ed. 1162.

■ Likewise, the fact that the proof showed the call was placed by defendant Sutton, whereas the indictment alleged it was made by defendant Moore. is not a fatal variance. In Bennett v. U. S., 227 U.S. 333, 33 S.Ct. 288, 57 L. Ed. 531, it was held that a variance in the name of the woman transported, in the place where the tickets were procured, or in the number of women transported, was not prejudicial and did not constitute reversible error. The court in that case, 227 U.S. at page 338, 33 S. Ct. at page 289, said,

"* * * the essential thing in the requirement of correspondence between the allegation * * * and the proof is that the record be in such shape as to inform the defendant of the charge against her and to protect her against another prosecution for the same offense."

The record in the present case is sufficient for both purposes. In any event, the commission of one overt act by any defendant was sufficient to sustain the charge of conspiracy. Braverman v. U. S., 317 U.S. 49, 63 S.Ct. 99, 87 L.Ed. 23. Since defendant Batsell was convicted on Count II of procuring a bus ticket for Gloria Jordell to travel from Minneapolis to Sioux Falls, and such overt act was alleged in the indictment, this was sufficient to sustain the conviction of all defendants on the conspiracy charge.

Defendant Cwach took the stand in her own behalf and testified that she had been operating a house of prostitution in Sioux Falls since 1936 and had never been arrested until January 26, 1952, when she received a six months jail sentence and a $500 fine. On cross-examination she testified that she had never paid protection money to the police or anyone in order to operate her business unmolested. In rebuttal the prosecution

called Detective Stene of the Sioux Falls Police Department to the stand. He testified, over objection, that defendant Cwach admitted to the judge at the time of sentencing that she had been paying protection money to certain members of the Sioux Falls Police Department.

 The objection to the admission of this testimony was well taken and should have been sustained. The prosecution was attempting to impeach defendant Cwach on a collateral matter by the use of extrinsic evidence. The rule has long been established that the self-contradiction of a witness by prior inconsistent statements may be shown only on a matter material to the substantive issues of the case. Yoder v. U. S., 10 Cir., 1934, 71 F.2d 85; 70 C.J., Sec. 1345. In U. S. v. Lawinski, 7 Cir., 1952, 195 F.2d 1, 7, the court, quoting from Sutherland v. U. S., 4 Cir., 92 F.2d 305, said,

"* * * nothing is better settled than that a witness, whether a party or not, may not be asked questions as to irrelevant matters on cross-examination for the purpose of contradicting his answers and thus discrediting him. (Cases cited.)"

In Foster v. U. S., 8 Cir., 1944, 145 F.2d 873, 875, this court held,

"Where a witness is asked concerning a collateral matter on cross-examination, the party cross-examining is bound by the witness' answer."

See also U. S. v. Klass, 3 Cir., 1948, 166 F.2d 373, and the many cases cited therein. There can be little doubt that the question of whether or not defendant Cwach made payments of protection money to the Sioux Falls police was collateral as not tending to prove any of the substantive issues of this case. The answers elicited on cross-examination should have concluded the matter.

Convinced as we are that this impeaching evidence was improperly admitted, it is clear that no prejudice sufficient to require a reversal resulted therefrom. Defendant Cwach's own testimony, together with the oral and documentary evidence introduced by the prosecution, conclusively established her guilt. She readily testified on direct examination that she had been running houses of prostitution in Sioux Falls since 1936; that in 1951 she was operating a house of prostitution called Frances Rooms; that Gloria Jordell came to Frances Rooms on December 19, 1951, registered, and worked there for several days as a prostitute. On cross-examination she testified that she herself worked as a prostitute during the busy seasons; that her two girls, Bonnie LeDay and Virginia Beck, both wanted to go home for the Christmas holidays in 1951; that she would lose money if one of the girls left without getting a replacement; that her earnings averaged about $800 per week, which represented one-half of what the girls made; and that when Gloria Jordell arrived on December 19, 1951, Bonnie LeDay left for several days. Upon consideration of all the evidence in the record, we are convinced that the verdict of the jury would have been the same had the improper impeaching evidence been excluded. It does not seem possible that this evidence, in light of all the facts and circumstances of the case, could have been prejudicial to defendant Cwach. Accordingly, we hold that no substantial rights of the defendant were affected and the erroneous admission of this evidence must be disregarded. Rule 52(a), Fed. Rules of Crim.Proc., 18 U.S.C.A.

██ Defendants also complain that two of the court's instructions were misleading and tended to confuse the jury. The challenged instructions were as follows:

"If you find beyond a reasonable doubt from the evidence in this case that the defendants, Frank Batsell, Clifford Eugene Moore, George Sutton and Frances Cwach, or any of them, did knowingly persuade, induce, entice, aid, abet, compel, command, assist or procure Gloria Jordell to travel by common carrier,

to-wit, a Greyhound bus, from Minneapolis, Minnesota, to Sioux Falls, South Dakota, for the purpose of having Gloria Jordell engage in the practice of prostitution, debauchery and other immoral purposes, you should find such defendants guilty of Count I.

"If you find beyond a reasonable doubt that Frank Batsell, Clifford Eugene Moore, George Sutton and Frances Cwach, or any two or more of them, conspired and agreed on or about December 18 or 19, 1951, to persuade, induce, entice, aid, abet, compel, command, assist or procure Gloria Jordell to travel by common carrier, to-wit, a Greyhound bus, from Minneapolis, Minnesota, to Sioux Falls, South Dakota, for the purpose of having Gloria Jordell engage in prostitution, debauchery and other immoral practices, and if you find that the defendants, or any of them, committed at least one overt act in furtherance of such conspiracy, you should find the defendants, or any two or more of them guilty of conspiracy as charged in count 3 of the indictment."

The argument that these instructions required the jury to find all defendants guilty if they found any one of them guilty, is patently without merit. The instructions are sufficiently clear in themselves, and when read in conjunction with the remainder of the charge there can be no doubt that the jury was clearly informed of their duty with respect to each defendant. The court further charged the jury:

"Your verdict must be unanimous, that is all of you must join in it. You will be given blank forms of verdict and for your information I will tell you that there are four. I think a reading of any one of them or all of them will make the manner in which you are to proceed clear to you. You will make a finding with reference to all of these defendants, Frances Cwach, Frank Batsell, Clifford Eugene Moore and George Sut-

ton. The body of the verdict reads: 'We, the jury in the above entitled action, do find the defendant—'. If you find him guilty leave it the way it is. If you find the defendant not guilty, write the word 'not' in. That has to do with the first count of the indictment. You have to keep these counts, these three counts, separate.

"The second [third] count has to do with the conspiracy, and you handle that one the same way, guilty if you find this particular one who is Frances Cwach guilty, or not guilty if you find her not guilty.

"Now, Frank Batsell has three, the others have two. His have to do with the first count and the second count and then the third count. The second count has to do with the ticket. That is why there is a distinction there. He is the only one who is charged with any complicity of having a ticket purchased.

"Do you think you understand that? Is there any question you want to ask me?

"[None]."

At the end of the charge the court asked counsel if there were any further exceptions, corrections, or objections, to be made. Defendants' counsel replied in the negative. We conclude, therefore, that the challenged instructions are without error.

█ Defendants Moore and Batsell make two further assignments of error, the first being the court's refusal to examine, or allow counsel to examine, prospective jurors regarding racial prejudice. The voir dire examination was conducted by the court as permitted under Rule 24(a), Fed.Rules of Crim.Proc. Counsel for defendants Moore and Batsell has filed an affidavit stating the court was requested to examine the jury panel as to racial prejudice and bias but refused to do so. The government in turn has filed the affidavit of defendant Sutton's counsel, who states that the court was very liberal in allowing coun-

sel for defendants to propound questions concerning racial prejudice, and the court so interrogated the prospective jurors. The record itself is silent as to whether such requests were made, and if so, whether they were refused. Under these circumstances, we must decline to hold that the court abused its discretion in curtailing the voir dire examination.

Defendants' final contention is that, by reason of the many alleged errors heretofore discussed, they have been denied a fair and impartial trial. We have painstakingly examined each assignment of error and conclude that no substantial rights of any of the defendants have been denied. The trial was complete, fair, and impartial, and defendants' guilt conclusively established.

Finding no reversible error in the record, the convictions and sentences appealed from are affirmed.