**UNITED STATES of America,**
**Plaintiff,**

v.

**60.14 ACRES OF LAND, MORE OR LESS, situate IN WARREN COUNTY, State of PENNSYLVANIA, and Arthur W. Seibel et al., Defendants.**

**Civ. A. No. 937.**

United States District Court
W. D. Pennsylvania.

Nov. 6, 1964.

**402**

Robert E. Tucker, Asst. U. S. Atty., Pittsburgh, Pa., for the United States.

Joseph J. Malizia, Emporium, Pa., and John G. Gent, Erie, Pa., for defendant landowner.

WILLSON, District Judge.

This civil action was tried to a jury at the June 1964 civil term at Erie. This Court for several years has been trying a number of civil actions in which the issue is the amount of just compensation due property owners as a result of the Government's condemnation of several hundred properties in the construction of the Allegheny River Reservoir Project commonly known as the Kinzua Dam.

In this case, Florence Laubach and Carl F. Laubach were the owners of a residential property situate in Corydon Township, Warren County, Pennsylvania. The property was condemned on January 18, 1963. The owners had purchased the property in 1938, and from that time until the date of condemnation had made many improvements particularly as to the exterior and interior of the dwelling house. Also, the grounds had been landscaped with plants, shrubs, shade trees, hedges, and bushes of various kinds that made the property a beautiful residence. The interior was modern in all respects with built-in cupboards, china closets, and a music cabinet. The library was paneled in fir plywood with an adjacent sun room equipped with glass throughout. The house was equipped with a modern kitchen, two bathrooms, a cellar, a modern heating system, water pipe lines, copper tubing plumbing, and in all respects the dwelling house was convenient. A modern cement-floor garage 28' x 36' had three stalls for cars, and under one stall was a cellar built for roots and vegetables. The vegetable storage place was lined with concrete and had an air circulating arrangement. The second floor of the garage was also floored in its entirety and was suitable for an apartment. In addition to the garage there was another outbuilding referred to as the woodshed.

The photographs introduced in evidence give a visible description of the dwelling house, garage, and the grounds surrounding the property.

The landowners testified on their own behalf and fixed the value at $32,000.00. The jury awarded $26,000.00 which is the amount of the judgment entered. The Government moved for a new trial. During the trial of the case, the Government presented but one witness, a man by the name of John J. Minsinger of Pittsburgh. An objection by plaintiff's counsel that the witness was incompetent to testify as to the market value of the property on the date of condemnation was sustained. The Government says this was error and it is the sole basis for its new trial motion. The trial record indicates that before the objection was sustained as to the qualifications of this witness some sixty-one pages of testimony were taken on direct and cross examination, as well as interrogation by the trial judge. The occupation of the witness was that of appraiser primarily, but his work in recent years had been largely confined to Allegheny County, Pa. He, however, held a real estate broker's license in Pennsylvania. He came to Warren County in 1961, for the purpose of investigating and appraising some 200 properties which had been or were to be condemned by the Government during the course of construction of the reservoir project. He had no general knowledge of market

prices or real estate values in the Warren County area where the property was situate. He was not in the business of making appraisals or buying and selling real estate for others in this area. He attempted to qualify as a witness in this case by giving consideration to four properties which he called "comparable sales."

In the trial of these Kinzua Dam cases, this Court has in recent months spent considerable time in examining the decisions and the text books relative to the qualifications of experts who are called to testify in land condemnation cases. One of the key cases on this subject is United States v. 13,255.53 Acres of Land etc., 158 F.2d 874 (3rd Cir. 1946), where the Court of Appeals speaking through Judge McLaughlin made the following observations:

"For a witness to give his opinion on market value of land, it must appear that he has actual personal knowledge of the facts affecting the land at the time of taking. With that background such person is assumed to be in a position to fairly estimate the value of the property. Recent sales of the particular premises or of similar parcels, generally speaking, are the most desirable standard but in the absence of such sales, valuation can still be arrived at by opinion evidence. Montana Railway Co. v. Warren, 137 U.S. 348, 354, 11 S.Ct. 96, 34 L.Ed. 681. As the Court said in Love v. United States, 8 Cir., 141 F.2d 981, at page 984:

" 'There is no exact rule as to the amount of knowledge a witness must possess in order to be permitted to testify as to the value of land. If it is shown that he knows the land and its surroundings, and that he has an opinion based upon something more than conjecture as to its value, he may be permitted to state his opinion. After a witness has testified that he knows the property and its value, he may be called upon to state such value. The

means and extent of his information, and therefore the worth of his opinion, may be developed at length on cross-examination.' "

In a recent case from the United States Supreme Court, United States v. Merz, 376 U.S. 192, 84 S.Ct. 639, 11 L.Ed.2d 629, Justice Douglas indicated that it was the duty of the trial judge to see that witnesses were properly qualified as experts and whether the comparable sales on which they relied were in fact comparable. It is certain that the proposed witness did not meet the general qualifications of an expert as to market value because he lacked general knowledge of the subject matter. He was sent to Warren County especially to investigate and appraise property to be condemned. The witness was in exactly the same category as the proposed witnesses mentioned in two decisions of the Supreme Court of Pennsylvania. In the first case cited, Schuck v. West Side B. R. Co., 283 Pa. 152, 128 A. 832, the language of the Court is:

" * * * his) knowledge * * * of sale or holding prices in that community * * * was mainly (of his) own properties' several miles away; that he had 'neither sold, bought, nor handled any property * * * within several miles' of plaintiff's property; and that his knowledge as to sales was obtained by looking 'them up in the records for the purpose of testifying in this case.' This was inadequate proof of his competency."

And in Tiffany v. Delaware, L. & W. R. Co., 262 Pa. 300, 105 A. 101, the language is:

"His testimony shows not only an utter lack of personal knowledge or familiarity with those things which qualify a witness to express an opinion as to market value in estimating damages in such cases, but it discloses an effort on the part of the witness to qualify himself as a witness by resorting to the public records to learn therefrom what sales of land had been made in the

neighborhood, when made, and the prices obtained therefor—a most objectionable proceeding from every point of view."

The law on this subject has been well and succinctly stated in the brief filed by Joseph J. Malizia, Esquire, attorney for landowners. Counsel having correctly stated the law, his language is adopted. It is as follows:

"A. Qualification of an Expert Generally?

"In the first instance, 'The qualification of a witness to render an opinion on the question of value may be the subject of a preliminary inquisition by the Court in the nature of a *voir dire*.' See Nichols on Eminent Domain, Vol. 5, Section 18.4(1), page 197.

"B. What is the nature and purpose of the Inquiry?

" ' * * * it must be shown that he has some peculiar means of forming an intelligent, correct judgment as to the value of the property in question or the effect upon it by a particular improvement, beyond what is possessed by men generally.' See Nichols on Eminent Domain, Vol. 5, Section 18.4(1), page 194. As expressed in Paradise Prairie Land Co. v. United States, 212 F.2d 170 (5th Cir. 1954), it was said by the Court:

" 'An expert is one who qualifies as such by reason of special knowledge and experience, whether or not he is authorized to practice in his special field under a licensing requirement imposed by Statute. The inquiry by the trial judge as to the qualifications of such a witness should be whether or not the witness possesses the special knowledge and experience to qualify as an expert, not whether or not he has complied with the states licensing requirements to practice that profession.'

"C. Assuming the witness to be a broker or Appraiser is this the only requirement or must the real estate broker be further qualified?

"As stated by the Court in the Paradise Case the mere fact a person is licensed is not the test. He must be further qualified by (1) showing his experience, (2) general knowledge on the subject, (3) familiarity with prices in the neighborhood, (4) and acquaintance with the subject property by personal examination.

"D. If a broker has personally conducted his business in the area could he nevertheless testify?

"If he did conduct his business in the area and examined the property there is no question he can testify. See Foster v. United States, 145 F.2d 873 (8th Cir. 1944). No particular comparable sales are necessary as experience and knowledge in the general area where the subject property is located is basis enough for an opinion.

"E. If a broker has not personally conducted his business in the area involved can he testify without more?

"This is the heart of the problem and the law in this situation requires knowledge somehow gained by the witness. It could be hearsay we admit but the law requires certain definite standards on comparable sales used as the basis or substitution for an expert not conducting his business in the area and generally certain propositions have been advised. The witness * * * must know market value in the neighborhood and * * * (Minsinger) admitted on cross-examination his knowledge was based on hearsay information on comparable sales.

"These general propositions have been upheld concerning comparable sales:

"(1) Competent data upon which expert relies must be relevant and competent.

"(2) Use of hearsay is not sufficient to condemn the witness if his comparable sales information is so determined.

"(3) Must know date of condemnation and date of comparable sales.

"(4) Comparable sales must be similar and proximate. See Nichols on Eminent Domain, Vol. 5, Section 21.31, page 439 et seq.

"(5) Comparable sales must be proximate in time and not too remote. See Nichols on Eminent Domain, Vol. 5, Section 21.31(2), page 451 et seq.

"(6) The comparable sale must be an arms length bargain deal and not a forced sale. See Nichols on Eminent Domain, Vol. 5, Section 21.32, page 461 et seq.

"F. In this case what did Minsinger do wrong?

"In a nutshell, Minsinger failed to establish he knew market value in the area from experience of conducting a business there. And as a result had to go further and show * * * how his knowledge was accumulated or gained. This then was where he ran into trouble, and the Court correctly disqualified the witness.

"When Minsinger failed to state he was basing his opinion on general knowledge but rather chose to base his knowledge on certain particular sales he had to establish that these sales meet the legal requirements of comparability as set forth under paragraph (E) above. This Minsinger failed to do. Minsinger admitted on the stand under cross-examination that he did not know whether or not the comparable sales were between parties not being obligated to buy or sell or not. He admitted not knowing whether or not legal compulsion to buy or sell existed. See Hickey v. United States, 208 F.2d 269 (3rd Cir. 1953), and Nichols on Eminent Do-

main, Vol. 5, Section 21.32, page 463. In many respects his admissions belied his knowledge. Mr. Minsinger conveyed to the Court (sic) a man who in the collection of his data was in too big a hurry to do a proper job. Mr. Tucker mistakenly believes that counsel for plaintiff objects to Mr. Minsinger because his information is based on hearsay or failing to talk to buyer or seller or both, etc. This is not the case at all. Witness can qualify on hearsay particularly men of Minsinger's past experience but when Minsinger admits no experience in the general area and then market data foundation is comparable sales which do not meet the initial requirement of the law, then broker appraiser M. A. I. (American Institute of Real Estate Appraisers) or not he should not be permitted to testify."

Counsel for the Government has cited three decisions from the Fourth and Fifth Circuits which he asserts support his position that the witness, Minsinger, was qualified. The cited cases are Love v. United States, 141 F.2d 981 (8th Cir. 1944); United States v. 5,139.5 Acres of Land etc., 200 F.2d 659 (4th Cir. 1952); and United States v. Lowrie, 246 F.2d 472 (4th Cir. 1957). This Court has no quarrel with these decisions, but it is apparent that counsel has misinterpreted their holding. The decisions relate to the admissibility of hearsay evidence which in part is the basis for the opinion of the witness, who is otherwise competent. A real estate man's general knowledge of market values in his community is, of course, based upon information he gathers in the course of his daily activities. Unless he has handled a transaction himself, it is always based upon hearsay; but as the information is gained in his line of business as a broker-agent, it is considered reliable and may in part influence his testimony. But it should be emphasized that the hearsay information he gathers comes to him contemporaneously with the transaction. He keeps track of market

values and sales. He follows the trend of market conditions. He thus acquires a general knowledge of the subject. That being so, when he takes the stand he may testify from general knowledge and point to matters of hearsay which in part are the basis of his opinion. But the witness, Minsinger, did not have the general knowledge and as a consequence relied solely on four so-called comparable sales. He was thus relying solely on hearsay and on sales which were not in fact comparable.

In the Court's discretion the objection to the competency of this witness was sustained. It is believed there was no error in that ruling.

### ORDER

And now, November 6th, 1964, for the reasons mentioned in the foregoing opinion, the motion to set aside the verdict of judgment and to grant a new trial is denied.